[Cite as *State v. Davidson*, 2013-Ohio-194.]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Julie A. Edwards, J. |
| -vs- | |
| | Case No. 12 CA 7 |
| SCOTT DAVIDSON | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:            Criminal Appeal from the Court of Common
                                    Pleas, Case No.  07 CR 0067


JUDGMENT:                           Affirmed in Part; Reversed in Part and
                                    Remanded


DATE OF JUDGMENT ENTRY:             January 17, 2013


APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

JOSEPH A. FLAUTT                    ANDREW T. SANDERSON
PROSECUTING ATTORNEY                BURKETT & SANDERSON, INC.
111 North High Street, P. O. Box 569    21 West Church Street
New Lexington, Ohio  43764-0569     Newark, Ohio  43055

*Wise, J.*

{¶1} Appellant Scott Davidson appeals from his convictions, in the Court of Common Pleas, Perry County, on one count each of conspiracy, illegal assembly or possession of chemicals for the manufacture of drugs, and illegal manufacture of drugs. The relevant facts leading to this appeal are as follows.

{¶2} On October 21, 2007, Sergeant Lee Hawks of the Perry County Sheriff's Office was on patrol on S.R. 204 in the northern part of the county. At about 3:00 AM, Sergeant Hawks observed an individual standing outside a residence, illuminated by the porch light. The sergeant turned around and drove past the house again, at which point the individual fled into the soybean fields behind the house. The sergeant circled back and turned into the house's driveway. As soon as he exited his cruiser, Sergeant Hawks smelled a strong odor of anhydrous ammonia and ether, consistent with the manufacturing process for methamphetamine.

{¶3} After Sergeant Hawks obtained backup, appellant and another individual, a female, were directed to exit the residence, at which time they were taken into custody, given their Miranda rights, and placed in separate cruisers. Hawks also made a cursory sweep of the inside of the house to check for other individuals. Eventually, appellant and the female individual were transported to the Perry County Sheriff's Office. Appellant was taken to an interview room, where he stated, after a few minutes, that he would not talk until he had an opportunity to speak with an attorney. However, as further analyzed infra, appellant subsequently agreed to waive his right to counsel and speak to the officers. Furthermore, a search warrant was obtained by about 7:30

AM, following which Hawks and two other officers searched the house, outbuildings, and vehicles on the property.

{¶4} On November 13, 2007, appellant was indicted by the Perry County Grand Jury on one count of conspiracy (specifically based on facilitating the other offenses by purchasing pseudoephedrine), one count of illegal assembly or possession of chemicals for the manufacture of drugs, and one count of illegal manufacture of drugs, as further detailed infra. Appellant appeared before the court with counsel on December 7, 2007 and entered pleas of not guilty to each count.

{¶5} On February 22, 2008, appellant filed a motion to suppress, inter alia, statements he made to sheriff's officials during his interrogation. The matter was heard on April 8 and April 22, 2008. The trial court issued a judgment entry denying the motion to suppress on May 8, 2008.

{¶6} The case proceeded to a jury trial on May 27 and 28, 2008. Appellant was found guilty on the three counts as charged in the indictment.

{¶7} Appellant was thereafter sentenced to one year in prison on Count I (Conspiracy); two years in prison on Count II (Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs); and, three years on Count III (Illegal Manufacture of Drugs). Each sentence was ordered to be served consecutive to the others, for an aggregate term of six years in prison.

{¶8} Appellant thereafter filed a request for leave to file a delayed appeal. We granted the request, and the present appeal now follows.[1]

---

[1] Appellant's brief fails to include or attach a copy of the suppression and sentencing judgment entries under appeal. See Loc.App.R. 9(A). We have reviewed the original trial court judgment entries in the record.

{¶9} Appellant herein raises the following two Assignments of Error:

{¶10} "I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE.

{¶11} "II. THE IMPOSITION OF CONSECUTIVE SENTENCES FOR ALLIED OFFENSES OF SIMILAR IMPORT WAS IMPROPER."

I.

{¶12} In his First Assignment of Error, appellant contends the trial court erred in overruling his motion to suppress statements he made to law enforcement officers while detained at the sheriff's office. We disagree.

{¶13} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726.

{¶14} In *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 694, the United States Supreme Court held that the Fifth Amendment to the United States Constitution prevents the admission at trial of statements made by a defendant during custodial interrogation when the defendant has not been advised of certain rights. "A

suspect's decision to waive his Fifth Amendment privilege is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." *State v. Collins,* Richland App.No. 2003–CA–0073, 2005–Ohio–1642, ¶ 141, citing *Colorado v. Spring* (1987), 479 U.S. 564, 574, 107 S.Ct. 851, 93 L.Ed.2d 954. A "totality of the circumstances test" is applied to this question. *See*, *e.g.*, *State v. Burgett*, Marion App No. 9-09-14, 2009-Ohio-5278, ¶ 39. "Once a criminal defendant invokes his right to counsel during a custodial police interrogation, the police must cease all questioning." *State v. Salinas* (1997), 124 Ohio App.3d 379, 385, 706 N.E.2d 381, citing *Miranda* at 444-445; *Edwards v. Arizona* (1981), 451 U.S. 477, 484–485, 101 S.Ct. 1880, 1884–1885, 68 L.Ed.2d 378, 385–387. "The questioning may not resume until the defendant has had the opportunity to consult with counsel who is present for any further interrogation *or the defendant himself reinitiates discussions with police*." *Id.*, emphasis added.

**{¶15}** The record in the case sub judice reveals that appellant, after a few minutes in the interview room, requested the opportunity to speak with a lawyer and that he refused to answer additional questions until he had consulted with a lawyer. Appellant had received his Miranda rights at the scene, and was asked again at the beginning of the interview if he understood his rights. There is no dispute that appellant was in custody during the interrogation in question. The trial court, in reaching its decision to deny appellant's suppression motion, appears to have accepted that appellant had changed his mind about speaking with counsel and had thereupon voluntarily spoken with the deputies. *See* Suppression Judgment Entry at 2. Appellant contends this finding was simply an assumption, as the trial court apparently determined

that appellant's recanting of his Miranda assertion took place at a point when the video camera had been paused or turned off. Our review of the videotape of the interrogation indeed indicates that Sergeant Hawks and another sergeant spoke with appellant in the interview room for about fifteen minutes, at which time appellant asserted his right to counsel. *See* State's Exhibit 3. The officers then brought another suspect into the interview room and spoke with her. *Id.* After her interview was completed, the videotape shows an empty interview room for about twenty minutes, but male voices can be heard off-camera. *Id.* The tape then shows that appellant was brought back into the interview room, where he was re-Mirandized and given time to write out a statement, followed by further discussion with Sergeant Hawks. *Id.*

{¶16} Despite the off-camera gaps in the interview, however, the trial court ran a lengthy suppression hearing in the case sub judice, during which Sergeant Hawks clearly testified that appellant, having been provided with a telephone to contact an attorney, subsequently initiated contact with the deputies away from the video. Tr., April 22, 2008, at 16-18. Hawks also recalled that appellant was re-Mirandized prior to any further questioning. *Id.* at 24-29, 38.

{¶17} It is well-recognized that the trier of fact is in a far better position to observe the witnesses' demeanor and weigh their credibility. *See State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. Upon review of the record, including the videotape of the interrogation, we hold the trial court did not err in denying the motion to suppress appellant's statements under the facts and circumstances of this case.

{¶18} Appellant's First Assignment of Error is overruled.

II.

{¶19} In his Second Assignment of Error, appellant argues, on the basis of allied offenses of similar import, that the trial court erred in imposing consecutive sentences. We agree.

{¶20} R.C. 2941.25 protects a criminal defendant's rights under the Double Jeopardy Clauses of the United States and Ohio Constitutions. *See State v. Jackson,* Montgomery App.No. 24430, 2012–Ohio–2335, ¶ 133, citing *State v. Johnson,* 128 Ohio St.3d 153, 942 N.E.2d 1061, 2010–Ohio–6314, ¶ 45. The statute reads as follows:

{¶21} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶22} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶23} For approximately the first decade of this century, law interpreting R.C. 2941.25 was based on *State v. Rance,* 85 Ohio St.3d 632, 636, 710 N.E.2d 699, 1999–Ohio–291, wherein the Ohio Supreme Court had held that offenses are of similar import if the offenses "correspond to such a degree that the commission of one crime will result in the commission of the other." *Id.* The *Rance* court further held that courts should compare the statutory elements in the abstract. *Id.*

**{¶24}** However, the Ohio Supreme Court, in *State v. Johnson, supra*, specifically overruled the 1999 *Rance* decision. The Court held: "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id.,* at the syllabus. As recited in *State v. Nickel,* Ottawa App.No. OT–10–004, 2011–Ohio–1550, ¶ 5, the new test in *Johnson* for determining whether offenses are subject to merger under R.C. 2921.25 is two-fold: "First, the court must determine whether the offenses are allied and of similar import. In so doing, the pertinent question is 'whether it is possible to commit one offense *and* commit the other offense with the same conduct, not whether it is possible to commit one *without* committing the other.' (Emphasis sic.) *Id.* at ¶ 48. Second, 'the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." ' *d.* at ¶ 49, quoting *State v. Brown,* 119 Ohio St.3d 447, 2008–Ohio–4569, ¶ 50 (Lanzinger, J., concurring in judgment). If both questions are answered in the affirmative, then the offenses are allied offenses of similar import and will be merged. *Johnson,* at ¶ 50."

**{¶25}** Appellant herein was sentenced in the case sub judice to one year in prison on Count I, Conspiracy; two years in prison on Count II, Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs; and, three years on Count III, Illegal Manufacture of Drugs. The sentences were ordered to be served consecutively to each other, for an aggregate term of six years in prison. We will accordingly review and compare the elements of these offenses.

**{¶26}** *Conspiracy/Illegal Assembly or Possession of Chemicals*

**{¶27}** The offense of conspiracy as charged in the case sub judice is set forth in R.C. 2923.01(A)(2) as follows:

**{¶28}** "No person, with purpose to commit or to promote or facilitate the commission of *** a felony drug trafficking, manufacturing, processing, or possession offense *** shall *** [a]gree with another person or persons that one or more of them will engage in conduct that facilitates the commission of any of the specified offenses."

**{¶29}** The offense of illegal assembly or possession of chemicals for the manufacture of drugs, as charged in the present case under R.C. 2925.041, is set forth as follows:

**{¶30}** "(A) No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code.

**{¶31}** " ***

**{¶32}** "(C) Whoever violates this section is guilty of illegal assembly or possession of chemicals for the manufacture of drugs. Except as otherwise provided in this division, illegal assembly or possession of chemicals for the manufacture of drugs is a felony of the third degree, and, except as otherwise provided in division (C)(1) or (2) of this section, division (C) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender. If the offense was committed in the vicinity of a juvenile or in the vicinity of a school, illegal assembly or possession of chemicals for the manufacture of drugs is a felony of the second degree, and, except as

otherwise provided in division (C)(1) or (2) of this section, division (C) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender. If the violation of division (A) of this section is a felony of the third degree under this division and if the chemical or chemicals assembled or possessed in violation of division (A) of this section may be used to manufacture methamphetamine, there either is a presumption for a prison term for the offense or the court shall impose a mandatory prison term on the offender, determined as follows:

**{¶33}** "(1) Except as otherwise provided in this division, there is a presumption for a prison term for the offense. If the offender two or more times previously has been convicted of or pleaded guilty to a felony drug abuse offense, except as otherwise provided in this division, the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree that is not less than two years. If the offender two or more times previously has been convicted of or pleaded guilty to a felony drug abuse offense and if at least one of those previous convictions or guilty pleas was to a violation of division (A) of this section, a violation of division (B)(6) of section 2919.22 of the Revised Code, or a violation of division (A) of section 2925.04 of the Revised Code, the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree that is not less than five years.

**{¶34}** "(2) If the violation of division (A) of this section is a felony of the second degree under division (C) of this section and the chemical or chemicals assembled or possessed in committing the violation may be used to manufacture methamphetamine, the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree that is not less than three years. If the violation of

division (A) of this section is a felony of the second degree under division (C) of this section, if the chemical or chemicals assembled or possessed in committing the violation may be used to manufacture methamphetamine, and if the offender previously has been convicted of or pleaded guilty to a violation of division (A) of this section, a violation of division (B)(6) of section 2919. 22 of the Revised Code, or a violation of division (A) of section 2925.04 of the Revised Code, the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree that is not less than five years."

{¶35} In the case sub judice, our review leads us to initially conclude that the first question under *Johnson,* i.e., whether it is possible, with the same conduct, to engage in conspiracy and knowingly assemble or possess chemicals that may be used to manufacture a controlled substance (schedule I or II), with the intent to manufacture, would be answered in the affirmative under the circumstances.

{¶36} We thus proceed to an examination of the second question under *Johnson.* The indictment states that the two offenses in question were alleged to have occurred "on or about October 20, 2007 to October 21, 2007." Upon review, we are persuaded that appellant's illegal acts in furtherance of the methamphetamine processing as charged were part of the same conduct. We therefore find the trial court erred in convicting and sentencing appellant on both of the aforesaid counts.

{¶37} *Conspiracy / Illegal Manufacture of Drugs*

{¶38} Again, the offense of conspiracy as charged in the case sub judice is set forth in R.C. 2923.01(A)(2):

**{¶39}** "No person, with purpose to commit or to promote or facilitate the commission of \*\*\* a felony drug trafficking, manufacturing, processing, or possession offense \*\*\*shall \*\*\* [a]gree with another person or persons that one or more of them will engage in conduct that facilitates the commission of any of the specified offenses."

**{¶40}** The offense of illegal manufacture of drugs under R.C. 2925.04, as charged herein, is set forth as follows:

**{¶41}** "(A) No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance.

**{¶42}** "\*\*\*

**{¶43}** "(C)(3) If the drug involved in the violation of division (A) of this section is methamphetamine, the penalty for the violation shall be determined as follows: (a) Except as otherwise provided in division (C)(3)(b) of this section, if the drug involved in the violation is methamphetamine, illegal manufacture of drugs is a felony of the second degree, and, subject to division (E) of this section, the court shall impose a mandatory prison term on the offender determined in accordance with this division. Except as otherwise provided in this division, the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree that is not less than three years. If the offender previously has been convicted of or pleaded guilty to a violation of division (A) of this section, a violation of division (B)(6) of section 2919.22 of the Revised Code, or a violation of division (A) of section 2925.041 of the Revised Code, the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree that is not less than five years.

**{¶44}** " ***"

**{¶45}** Upon review, we reach the same conclusion as we did above in regard to the comparison of conspiracy and the illegal assembly or possession of chemicals for the manufacture of drugs. We therefore find the trial court erred in convicting and sentencing appellant on both of the counts of conspiracy and the illegal manufacture of drugs.

**{¶46}** *Illegal Assembly or Possession of Chemicals / Illegal Manufacture of Drugs*

**{¶47}** Applying a *Johnson* analysis to the "illegal assembly/possession of chemicals" and "illegal manufacture of drugs" as charged in the case sub judice, we find it is possible to commit both offenses with the same conduct, and appellant's acts of supplying the pseudoephedrine used in the methamphetamine production in this instance were indeed part of the same conduct. We therefore find the trial court erred in convicting and sentencing appellant on both of the aforesaid counts.

**{¶48}** Appellant's Second Assignment of Error is therefore sustained.

**{¶49}** For the reasons stated in the foregoing, the decision of the Court of Common Pleas, Perry County, Ohio, is hereby affirmed in part, reversed in part, and remanded for a new sentencing hearing at which the State must elect which allied offense it will pursue for sentencing.

By: Wise, J.

Gwin, P. J., concurs.

Edwards, J., concurs in part and dissents in part.

_____

_____

_____

JUDGES

JWW/d 1109

EDWARDS, J., CONCURRING IN PART AND DISSENTING IN PART OPINION

{¶50} I respectfully concur with the majority's analysis and disposition of appellant's first assignment of error.

{¶51}   With respect to appellant's second assignment of error, I concur with the majority that the offenses of illegal assembly or possession of chemicals for the manufacture of drugs (Second Count) and illegal manufacture of drugs (Third Count) are allied offenses of similar import.  However, I disagree with the majority's conclusion that the offense of conspiracy to commit or to promote or facilitate the commission of these offenses is an allied offense of similar import.  I find that the conspiracy offense was committed with a separate animus.  With respect to the First Count, I find that the intention to agree with another person or persons to engage in conduct that facilitates the commission of such offense by purchasing pseudoephedrine is separate from the intention to possess and or manufacture drugs.  I would find, therefore, that the trial court did not err in convicting and sentencing appellant with respect to both offenses.

_____

Judge Julie A. Edwards

IN THE COURT OF APPEALS FOR PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                          :
                                       :
    Plaintiff-Appellee                 :
                                       :
-vs-                                   :        JUDGMENT ENTRY
                                       :
SCOTT DAVIDSON                         :
                                       :
    Defendant-Appellant                :        Case No. 12 CA 7


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Perry County, Ohio, is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

Costs to be split between Appellant and the State of Ohio.


                                _____


                                _____


                                _____

                                       JUDGES