[Cite as *State v. Carr*, **2016-Ohio-9.**]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 15-CA-00007 |
| ROBERT CARR | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Criminal appeal from the Perry County
Court of Common Pleas, Case No. 12-CR-0076

JUDGMENT: Affirmed in part; vacated in part; remanded

DATE OF JUDGMENT ENTRY: January 4, 2016

APPEARANCES:

For Plaintiff-Appellee

JOSEPH FLAUTT
111 N. High Street
New Lexington, OH 43764

For Defendant-Appellant

VALERIE WIGGINS
107 S. Main St.
New Lexington, OH 43764

*Gwin, P.J.*

{¶1}    Appellant Robert Carr ["Carr"] appeals his convictions and sentences after a jury trial in the Perry County Court of Common Pleas on one count of Illegal Manufacture of Drugs in violation of R.C. 2925.04 (A) and (C)(3)(a) a felony of the second degree; one count of Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs, in violation of R.C. Section 2925.041 (A) and (C) a felony of the third degree; one count of Aggravated Possession of Drugs, in violation of R.C. Section 2925.11 (A) and (C)(1)(a) a felony of the fifth degree and one count of Aggravated Trafficking in Drugs, in violation of R.C. 2925.03 (A)(2) and (C)(1)(a), a felony of the fourth degree.

*Facts and Procedural History*

{¶2}    On August 14, 2012, the Perry County Drug Task Force executed a search warrant on the Carr's home after receiving information that drug activity was being conducted in the home. During the search, they recovered methamphetamine, and items indicative of methamphetamine manufacturing activity, including, a baggie containing a white crystalized substance, which was found on the floor near Carr. Carr admitted that the substance was his. The substance was tested and determined to be methamphetamine. The Task Force secured the items and arrested Carr, and several of his relatives.

{¶3}    In addition, during the search, multiple plastic bottles were found which had previously been used in the process of manufacturing methamphetamine. These items were found after Carr advised the officers that there was a methamphetamine lab in the upstairs of the home. Two hydrochloric acid gas generators were also found in the upstairs of the residence.

{¶4} Carr admitted during his subsequent interview with the police that he had finished making methamphetamine in the upstairs at around 2:00 a.m. Also found in the residence was a plastic bottle determined to be the remnants of a "one pot" style lab. This bottle tested positive for anhydrous ammonia gas. In addition to the bottles and trash from previously completed labs, the officers found sandwich bags, coffee filters, rubber tubing, drain cleaner, and Coleman camp fuel. Carr admitted that these items were used in the methamphetamine manufacturing process. In his interview, Carr provided systematic instructions for manufacturing methamphetamine.

{¶5} On March 27, 2013, a letter from Carr to the Court was filed. The letter asked the Court to appoint Carr new counsel. At the time the letter was filed, the matter was scheduled for jury trial on April 11, 2013. A hearing was held on April 2, 2013 and the trial court denied the request for new counsel.

{¶6} On April 10, 2013, Carr filed a Motion for a Continuance. The trial court denied the motion. On the scheduled jury trial date of April 11, 2013, Carr failed to appear and a warrant was issued for his arrest.

{¶7} Carr was ultimately arrested and the case was scheduled for a status/plea hearing on May 15, 2014 and jury trial on May 22, 2014. Carr appeared before the Court on May 15, 2014, rejected the plea offer and advised the Court that he desired to proceed to trial.

{¶8} On May 22, 2014, the matter proceeded to trial before a jury with the jury returning guilty verdicts on all four counts.

{¶9} On June 16, 2014, Carr was sentenced to five years imprisonment, a $7,500.00 fine and a two years driver's license suspension on the charge of Illegal

Manufacture of Drugs; 24-months imprisonment, a $1,000.00 fine and a six month driver's license suspension on the charge of Illegal Assembly or Possession of Chemical for the Manufacture of Drugs; and 6-months imprisonment, a $1,000.00 fine and a six month driver's license suspension on the charge of Aggravated Trafficking in Drugs. The Court merged the charge of Aggravated Possession of Drugs with the charge of Illegal Manufacture of Drugs. All periods of imprisonment were ordered to be served concurrently and all driver's license suspensions were ordered to be served consecutively.

*Assignments of Error*

{¶10} Carr raises three assignments of error,

{¶11} "I. THE TRIAL COURT VIOLATED THE DEFENDANT'S SIXTH AMENDMENT RIGHTS WHEN IT ERRONEOUSLY DENIED THE DEFENDANT'S REQUEST FOR NEW COUNSEL.

{¶12} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO MERGE COUNT 1, ILLEGAL MANUFACTURING (R.C. §2925.04) AND COUNT 2, ILLEGAL ASSEMBLY (R.C. §2925.041) AS ALLIED OFFENSES OF SIMILAR IMPORT.

{¶13} "III. TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE TO THE APPELLANT WHICH RESULTED IN PREJUDICE."

I.

{¶14} In his first assignment of error, Carr argues the trial court erred by not allowing him to discharge his court-appointed counsel.

{¶15} The right to competent counsel does not require that a criminal defendant develop and share a "meaningful relationship" with his attorney. *Morris v. Slappy*, 461

U.S. 1, 13, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610(1983); *State v. Blankenship*, 102 Ohio App.3d 534, 657 N.E.2d 559 12 Dist. 1995); *State v. Burroughs*, 5th Dist. Delaware No. 04CAC03018, 2004-Ohio-4769, ¶ 11.

{¶16} In the context of reviewing a claim by the defendant that the trial court abused its discretion by overruling the defendant's request to discharge court appointed counsel and to substitute new counsel for the defendant the courts have taken the approach that the defendant must show a complete breakdown in communication in order to warrant a reversal of the trial court's decision. In *State v. Cowans*, 87 Ohio St.3d 68, 1999-Ohio-250, 717 N.E.2d 298(1999) the Court noted: "[e]ven if counsel had explored plea options based on a belief that Cowans might be guilty, counsel's belief in their client's guilt is not good cause for substitution. "'A lawyer has a duty to give the accused an honest appraisal of his case. * * * Counsel has a duty to be candid; he has no duty to be optimistic when the facts do not warrant optimism.'" *Brown v. United States,* 264 F.2d 363, 369(D.C.1959), (en banc), *quoted in McKee v. Harris* (2nd Cir. 1981), 649 F.2d 927, 932. "'If the rule were otherwise, appointed counsel could be replaced for doing little more than giving their clients honest advice.'" *McKee,* 649 F.2d at 932, *quoting McKee v. Harris*, 485 F.Supp. 866, 869(S.D.N.Y. 1980)." Id. at 73, 717 N.E.2d at 304-305.

{¶17} In a similar vein, it has been held that hostility, tension, or personal conflicts between an attorney and a client that do not interfere with the preparation or presentation of a competent defense are insufficient to justify a change in appointed counsel. See *State v. Henness*, 79 Ohio St.3d 53, 65-66, 679 N.E.2d 686(1997). Furthermore, "[m]erely because appointed counsel's trial tactics or approach may vary from that which appellant views as prudent is not sufficient to warrant the substitution of counsel." *State v. Glasure,*

132 Ohio App.3d 227, 239, 724 N.E.2d 1165(7th Dist. 1999); *State v. Evans* (2003), 153 Ohio App.3d 226, 235-36, 2003-Ohio-3475, ¶31, 792 N.E.2d 757,764(7th Dist.); *State v. Newland*, 4th Dist. No. 02CA2666, 2003-Ohio-3230, ¶11.

**{¶18}** A defendant has no constitutional right to determine trial tactics and strategy of counsel. *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298(1999); *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 150; *State v. Donkers,* 170 Ohio App.3d 509, 867 N.E.2d 903, 2007-Ohio-1557, ¶ 183(11th Dist.). Rather, decisions about viable defenses are the exclusive domain of defense counsel after consulting with the defendant. Id. When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189(1980), citing *People v. Miller*, 7 Cal.3d 562, 573-574, 102 Cal.Rptr. 841, 498 P.2d 1089(1972); *State v. Wiley*, 10th Dist. No. 03AP-340, 2004- Ohio-1008 at ¶ 21.

**{¶19}** Carr has not established that such a breakdown occurred to warrant appointment of new counsel. Indeed, our review of the record indicates appellant's counsel was thoroughly prepared.

**{¶20}** During the April 2, 2013 hearing on Carr's motion to discharge appointed counsel, Carr informed the trial court that he was attempting to hire counsel to represent him. T. Apr. 2, 2013 at 5. He further informed the court he was attempting to raise money to hire counsel. Id. at 12. The state placed the plea offer on the record. Id. at 14-16.  Carr rejected the state's offer. Id. at 14; 16.

**{¶21}** Carr's attorney forwarded copies of discovery to him on January 8, 2013. Id. at 6. Defense counsel cleared up Carr's confusion about the video evidence. Id. at 5-

6. Counsel discussed the case with Carr on the telephone. Id. at 7. Counsel relayed the state's plea offers to Carr. Id.

**{¶22}** Carr's jury trial did not commence until over one-year later on May 22, 2014. Carr did not renew his request for new counsel prior to the start or during his trial.

**{¶23}** The most damning evidence in the case at bar, was Carr's confession given after being properly advised of his right to counsel.

**{¶24}** Upon a complete and thorough review of the record in this case we find Carr has failed to establish a breakdown in attorney-client relationship of such magnitude as to jeopardize defendant's right to effective assistance of counsel. *State v. Coleman*, 37 Ohio St.3d 286, 292, 525 N.E.2d 782, 788-789(1988).

**{¶25}** Carr's first assignment of error is overruled.

II.

**{¶26}** In his second assignment of error, Carr argues that the trial court erred by failing to merge his conviction for illegal manufacture of methamphetamine with his conviction for assembly or possession of chemical used in the manufacturing of methamphetamine.

**{¶27}** In this case, Carr failed to object to his sentences in the trial court. In *State v. Rogers*, the Ohio Supreme Court recently examined a case where the defendant was convicted of multiple offenses pursuant to a guilty plea. *State v. Rogers*, 143 Ohio St.3d 385, 2015–Ohio–2459, 38 N.E.3d 860. The defendant appealed and argued for the first time on appeal that some of the convictions should have merged for sentencing. Id. at ¶ 11. The matter was certified as a conflict and presented to the Ohio Supreme Court. In making its decision, the Court clarified the difference between waiver and forfeiture as it

pertains to allied offenses. Id. at ¶19–21. The Court rejected the argument that by entering a guilty plea to offenses that could be construed to be two or more allied offenses of similar import, the accused waives the protection against multiple punishments under R.C. 2941.25. Id. at ¶ 19. The Court held that an accused's failure to seek the merger of his or her convictions as allied offenses of similar import in the trial court, the accused forfeits his or her allied offenses claim for appellate review. Id. at ¶ 21. "[F]orfeiture is the failure to timely assert a right or object to an error, and * * * 'it is a well-established rule that "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." Id. at ¶ 21.

{¶28} The accused may raise a forfeited claim on appeal through Crim.R. 52(B). Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Court held in *Rogers:*

An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. Accordingly, an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; absent that showing, the accused cannot demonstrate that the trial court's failure

to inquire whether the convictions merge for purposes of sentencing was plain error.

2015–Ohio–2459, ¶3. The Court in *Rogers* reaffirmed that even if an accused shows the trial court committed plain error affecting the outcome of the proceeding, the appellate court is not required to correct it. Id. at ¶ 23. The Supreme Court stated:

[W]e have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'"(Emphasis added.) *Barnes* at 27, 759 N.E.2d 1240, *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*Rogers* at ¶23.

{¶29}  R.C. 2941.25, Multiple counts states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶30}  In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.2d 892, the Ohio Supreme Court revised its allied-offense jurisprudence,

1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors-the conduct, the animus, and the import.

2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

{¶31} *Ruff,* at syllabus. The Court further explained,

A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation.

\* \* \*

An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

{¶32} Carr was convicted of one count of illegal manufacture of drugs in violation of R.C. 2924.04,

(A) No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance.

{¶33} Carr was also convicted of one count of illegal assembly or possession of chemicals used to manufacture controlled substance with intent to manufacture controlled substance in violation of R.C. 2925.041,

(A) No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code.

{¶34} In the case at bar, it was clear when the police entered the home that methamphetamine had been manufactured inside the home. Carr admitted to manufacturing methamphetamine.

{¶35} Plastic tubing, baggies, envelopes, plastic bottles, batteries, cold compact bags, aquarium rocks and coffee filters are not "chemicals" as required under R.C. 2925.041. None of the active ingredient such as pseudoephedrine[1] was found; rather, only the discarded boxes were recovered from the trash. In his statement to the police, Carr stated that other parties provided the necessary ingredients.

{¶36} Just as a baker would need flour to "assemble" or "manufacture" a cake, it is scientifically impossible to manufacture methamphetamine without the raw chemical ingredients, such as pseudoephedrine. In other words, every time a person commences a "cook" he or she must necessarily possess the requisite raw chemical ingredients

---

[1] Pseudoephedrine is a decongestant ingredient in many medications used for the treatment of colds and nasal decongestant, such as Sudafed.

necessary to manufacture the end product of crystal methamphetamine. Thus, a defendant must always "knowingly assemble or possess one or more chemicals that may be used to manufacture" methamphetamine with the "intent to manufacture."

{¶37} If the police had entered the home and found, for example, 50 boxes of pseudoephedrine and nothing more, a case could be made for illegal assembly. It is not illegal to possess pseudoephedrine, but the unexplained possession of such a large amount would be circumstantial evidence. If the state can establish the mens rea of "with the intent to manufacture" a defendant can be convicted of assembly or possession in violation of R.C. 2925.041.

{¶38} Applying the facts and viewing Carr's conduct in this case, illegal manufacture of drugs in violation of R.C. 2924.04 and illegal assembly or possession of chemicals used to manufacture controlled substance with intent to manufacture controlled substance in violation of R.C. 2925.041 did not cause separate, identifiable harm. Carr did not commit the offenses separately nor were the two offenses committed with separate animus or motivation. Carr's motivation and animus for obtaining and/or assembling the chemicals was to manufacture methamphetamine.

{¶39} Accordingly, we find the assembly or possession of the chemicals and the manufacture of methamphetamine are allied offenses. *Accord*, *State v. Coleman,* 5th Dist. Richland No. 14-CA-82, 2015-Ohio-3907, ¶52; *See*, *State v. Davidson,* 5th Dist. Perry No. 12 CA 7, 2013-Ohio-194, ¶47(applying the pre-*Ruff* allied offenses test set forth in *State v. Johnson*, 128 Ohio St.3d 153, 2010–Ohio–6314); *State v. Stevenson*, 5th Dist. Perry No. 09CA16, 2010–Ohio–2060, ¶ 32 (applying the pre-*Ruff* allied offenses test set forth in *State v. Cabrales*, 118 Ohio St.3d 54, 886 N.E.2d 181, 2008–Ohio–1625 and

finding the possession of chemicals and the engagement in any part of the production of drugs are allied offenses that do not have a separate animus); *State v. Collins*, 12th Dist. Clinton Nos. CA2010–12–021, CA2010–12–022, 2012–Ohio–430 (applying the pre-*Ruff* allied offenses test set forth in *State v. Johnson*, 128 Ohio St.3d 153, 2010–Ohio–6314).

{¶40} In *State v. Damron*, 129 Ohio St.3d 86, 2011–Ohio–2268, 950 N.E.2d 512, the Ohio Supreme Court noted,

> When a defendant has been found guilty of offenses that are allied offenses, R.C. 2941.25 prohibits the imposition of multiple sentences. *Whitfield,* 124 Ohio St.3d 319, 2010–Ohio–2, 922 N.E.2d 182, at ¶ 12. Therefore, a trial court must merge the crimes into a single conviction and impose a sentence that is appropriate for the offense chosen for sentencing. *State v. Brown*, 119 Ohio St.3d 447, 2008–Ohio–4569, 895 N.E.2d 149, at ¶ 41–43. In this case, the sentencing court found Damron guilty of both offenses and sentenced him on both. The imposition of concurrent sentences is not the equivalent of merging allied offenses.

Id. at ¶ 17.

{¶41} The Court in *State v. Whitfield*, 124 Ohio St.3d 319, 2010–Ohio–2, held,

> If, upon appeal, a court of appeals finds reversible error in the imposition of multiple punishments for allied offenses, the court must reverse the judgment of conviction and remand for a new sentencing hearing at which the state must elect which allied offense it will pursue against the defendant. On remand, trial courts must address any double jeopardy protections that benefit the defendant...

*Whitfield, supra* at ¶ 25.

{¶42} In cases in which the imposition of multiple punishments is at issue, R.C. 2941.25(A)'s mandate that a defendant may only be "convicted" of one allied offense is a protection against multiple sentences rather than multiple convictions. *See, e.g., Ohio v. Johnson*, 467 U.S. 493, 498, 104 S.Ct. 2536, 81 L.Ed.2d 425(1984). A defendant may be indicted and tried for allied offenses of similar import, but may be sentenced on only one of the allied offenses. *State v. Brown*, 119 Ohio St.3d 447, 2008–Ohio–4569, 895 N.E.2d 149, ¶ 42. Because R.C. 2941.25(A) protects a defendant only from being punished for allied offenses, the determination of the defendant's guilt for committing allied offenses remains intact, both before and after the merger of allied offenses for sentencing. *State v. Whitfield,* 124 Ohio St .3d 319, 2010–Ohio–2, 922 N.E.2d 182, ¶ 27. Thus, the trial court should not vacate or dismiss the guilt determination on each count. Id. Pursuant to *Damron,* the imposition of concurrent sentences is not the equivalent of merging allied offenses.

{¶43} On the record in the case at bar, we find that Carr has demonstrated that he was convicted of allied offenses of similar import committed with the same conduct and with the same animus.

{¶44} Pursuant to *Whitfield, supra*, the sentences are vacated and the matter is remanded to the trial court for resentencing where the state must elect the offense for which appellant should be punished.

{¶45} Carr's second assignment of error is sustained.

III.

**{¶46}**  In his third assignment of error, Carr argues that he received ineffective assistance of counsel because he did not meet face to face with Carr.

**{¶47}**  A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

**{¶48}**   Counsel is unconstitutionally ineffective if his performance is both deficient, meaning his errors are "so serious" that he no longer functions as "counsel," and prejudicial, meaning his errors deprive the defendant of a fair trial. *Maryland v. Kulbicki,* 577 U.S. __, 2015 WL 5774453(Oct. 5, 2015) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

**{¶49}**  In the case at bar, Carr's allegations that counsel did not meet with him occurred April 2, 2013; however, Carr's jury trial did not commence until May 22, 2014. Carr did not renew his claim prior to the start of his jury trial in 2014.

**{¶50}**  An appellant must demonstrate that he suffered prejudice from his counsel's performance. See *Strickland,* 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. To prevail on his ineffective-assistance claim, an appellant must show, therefore, that there is a "reasonable probability" that the trier of fact would not have found him guilty.

{¶51} Carr has failed to establish that he suffered prejudice because of the failure of counsel to meet with him face-to-face. Specifically Carr does not provide this Court with any rationale as to how his case would have proceeded any differently had counsel met with him, rather than communicating by telephone. Counsel relayed the state's plea negotiations. Carr rejected those offers. Carr's taped confession was admitted into evidence and played for the jury.

{¶52} We find no errors rising to the level of *Bradley* and *Strickland* nor any deficiency in trial counsel's performance that deprived Carr of a fair trial.

{¶53} Carr's third assignment of error is overruled.

{¶54} Accordingly, the judgment of the Perry County Court of Common Pleas is affirmed, in part and vacated, in part. In accordance with the Ohio Supreme Court's decision in *State v. Whitfield*, 124 Ohio St .3d 319, 2010–Ohio–2, 922 N.E.2d 182, we remand this case to the trial court for further proceedings consistent with that opinion. This decision in no way affects the guilty verdicts issued by the jury. It only affects the entry of conviction and sentence. Carr's convictions are affirmed.

By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur