THE STATE OF OHIO, APPELLEE, *v.* KNIGHT, APPELLANT.

290

(No. 47872—Decided October 9, 1984.)

*John T. Corrigan,* prosecuting attorney, for appellee.

*John A. Frenden,* for appellant.

JACKSON, J. Appellant, Barbara Knight, was indicted for and convicted of aggravated murder, on account of her alleged participation in the death of Danny Baker.

Baker was shot in the chest on the evening of July 12, 1981, following a street fight. Jimmy and Ronald Panagopoulas (brothers), and Baker, were fighting Ronald Neely and Donald Wixson, who are also brothers, and the sons of appellant Knight. Jimmy Panagopoulas saw the appellant open the door of her house to hand Neely a gun, and testified that appellant told Neely to "shoot him, shoot him." Jimmy ran off, heard shots, and saw Baker fall. Ronald Panagopoulas saw Neely shoot Baker. Ronald testified that Wixson then told Neely, "[s]hoot him [Ronald] too."

Ronald Panagopoulas, Glenn Grimes (uncle to Ronald and Jimmy Panagopoulas) and Phyllis Panagopoulas (mother to Ronald and Jimmy) came on the scene immediately after the shooting and saw Neely holding the gun, warning others that they would be killed if they came too close. According to Phyllis Panagopoulas, Neely also stated, "I hope the motherfucker dies."

Dr. Stenson, who was visiting his mother in the house next door to appellant's residence, saw Jimmy Panagopoulas and another man (presumably Ronald) run away from the fight immediately after the shots were fired. He also heard a man subsequently shout that if anyone came around the corner they would be "blown away." This testimony was corroborated by Mrs. Irene Cornell, another neighbor, who stated that after the shooting she saw a man with a gun threatening others to stay away.

Responding police officers Falcoski and Rosen asked the wounded Baker who had shot him. Baker pointed to Neely and Wixson. At the hospital, Officer Falcoski told Baker that he "didn't have much time (to live)," and asked Baker who shot him. Baker responded, "Ronald Neely."

Anthony Klick, a friend of *all* of the persons involved in this case, testified that two years prior to this incident, following an argument between appellant and Jimmy Panagopoulas, Knight said, "I would like to shoot the little bastard."

Appellant and defendants Neely and Wixson, all testified in their own behalf. Knight stated that the fight started when Jimmy Panagopoulas called her a vulgar name, in front of her sons. She testified that she went back inside the house, and remained there throughout the incident. Neely and Wixson admitted that they had been fighting with Baker and the Panagopoulas brothers, but that they did not shoot Baker. Neely stated that he was fighting when he heard shots fired, and Wixson testified that he had already run to his wife's home before the shooting occurred. The wife of Wixson testified that he was in the house when the gunshots were fired. The defendants and two other persons testified as to the violent character of the Panagopoulas brothers.

On the basis of this evidence appellant was convicted of aggravated murder.[1] She has assigned four errors for review by this court.

---

[1] Wixson and 'Neely filed separate appeals from their convictions for aggravated murder. See fn. 4, *infra.*

## I

Appellant contends in assignments of error one and two that the trial court committed procedural error in failing to order separate counsel or separate trials for the three defendants.[2]

None of the defendants requested a separate trial. According to the Ohio Supreme Court, such a request is a prerequisite to raising the issue on appeal. *State* v. *Henry* (1983), 4 Ohio St. 3d 44. Thus, despite the language of Crim. R. 14 that a joint trial in a capital case shall not be ordered "unless the court orders the defendants to be tried jointly, upon application by the prosecuting attorney or one of more of the defendants, and for good cause shown," it is incumbent upon the defendants to request separate trials in order to preserve the point for appeal.[3]

The alleged error on the question of the multiple representation of the defendants was expressly waived on the record by the defendants. Before trial, the prosecutor requested the court to determine whether a conflict of interest existed:

"Judge, as far as I can tell from my perspective, there's not a conflict between Defenses or among the three Defendants. But, it's something — my only request is so we can make sure that we have no difficulty at any later date that all three Defendants understand what the representation consists of.

"THE COURT: Now, originally there was a Michael Feldman, I believe, representing — they retained counsel to this case, and then subsequently the Court appointed both Defense counsel.

"Mr. Wixson, are you satisfied with the present circumstances of being represented by two attorneys in this matter?

"MR. WIXSON: Yes.

"THE COURT: And Ronald Neely?

"MR. NEELY: Yes, Your Honor.

"THE COURT: And Barbara Knight?

"MS. KNIGHT: Yes.

"THE COURT: Okay. Then I see no impediment to the current status of representation."

No actual conflict of interest developed at trial. The testimony and the theories of the defendants were consistent with each other. Accordingly, since the appellant raised no objection at trial, and no actual conflict of interest appears in the record, the appellant's constitutional right to the effective assistance of counsel was not violated. *Cuyler* v. *Sullivan* (1980), 446 U.S. 335. The appellant's first and second assigned errors are not well-taken.[4]

---

[2] Assignment of Error No. 1

"The trial court erred in failing to provide defendant with her own counsel at trial."

Assignment of Error No. 2

"The trial court erred in failing to provide appellant with a separate trial as required by Criminal Rule 14 and Ohio Revised Code 2945.20."

[3] The Ohio Supreme Court in *State* v. *Henry*, *supra*, at 45, fn.1, stated:

"Since defendant-appellee Long was the only party who requested separate trials, he alone could preserve this point on appeal."

[4] This court is mindful that our disposition of the first and second assigned errors is inconsistent with this court's determination of the same issues in *State* v. *Wixson* (Oct. 13, 1983), Cuyahoga App. No. 46341, unreported. In that case, a visiting panel of this court found that the trial court committed reversible error in failing to order a separate trial or separate counsel for defendant Wixson, despite the fact that he, like defendant Knight in the case at bar, failed to request a separate trial and stated on the record that he desired to be represented jointly with the other defendants.

Wixson's conviction was also reversed on the ground that the evidence did not support his conviction for aggravated murder of

## II

Appellant asserts in her third assigned error that the trial court erred in ruling that a hearsay statement was admissible as a dying declaration.[5]

Evid. R. 804(B) provides in part that:

"The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

"* * *

"(2) In a prosecution for homicide or in a civil action or proceeding, a statement made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death."

This is the "dying declaration" exception to the hearsay rule. Baker's statement to police that Neely shot him is admissible, if at all, under this rule. A precondition to admissibility is evidence that Baker believed that his death was imminent. This "preliminary fact" is to be determined by the court. Evid. R. 104(A). The record contains sufficient evidence to support the implicit finding of the court that Baker held such a belief. First, Baker was in fact mortally wounded through the chest. Second, when he made the statement hospital personnel were working furiously to

save him. Third, Baker had lost a substantial amount of blood, a fact concerning which he probably was aware. Fourth, immediately before he made the statement, police told him that he did not have long to live.

Baker's statement was properly admitted as a dying declaration. The third assigned error is not well-taken.

## III

In appellant's fourth assigned error she contends that the prosecutor is guilty of misconduct, for improper closing argument.[6] We agree that the statement by the prosecutor was improper, but we are not persuaded that the comments require reversal of the appellant's conviction.

The assistant county prosecutor stated to the jury, "I don't even think that Mr. Hrisko [defense counsel] believes her [the appellant] * * *." This kind of statement represents improper behavior. It reflects adversely on our judicial system and serves no useful purpose in the orderly administration of justice.

The record discloses that the foregoing comment was not objected to by the defense, and this court is convinced that such comments did not deprive appellant of a fair trial. The fourth assigned error is not well-taken.

---

Baker. Thus, even if the court in *Wixson* had found no merit in his assignments of error relating to his entitlement for separate trials and counsel, the same result (reversal and remand) would have been reached.

More disturbing is the fact that the appeals of appellant, Neely, and Wixson were not consolidated for consideration by this court. In *State v. Neely* (Oct. 13, 1983), Cuyahoga App. No. 46228, unreported, another visiting panel of this court affirmed Neely's conviction for aggravated murder. As we determine today in Knight's appeal, the court in Neely found no merit to the assignment of error concerning the joint representation of the defendants by trial

counsel. The decisions of this court in *Neely* and *Wixson*, decided the same day, were inconsistent. Fortunately, as explained above, the reversal of Wixson's conviction was also predicated upon grounds special to him, *i.e.,* his lack of involvement in the shooting of Baker.

[5] Assignment of Error No. 3
"The trial court erred in ruling that a hearsay statement was admissible as a dying declaration."

[6] Assignment of Error No. 4
"Prosecutorial misconduct during final argument denied appellant a fair trial."

Accordingly, the decision of the trial court is affirmed.

*Judgment affirmed.*

MARKUS, P.J., and PRYATEL, J., concur.