[Cite as *State v. Warren*, 2019-Ohio-2927.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| MATTHEW WARREN | : | Case No. 18-CA-42 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Fairfield County
                             Court of Common Pleas, Case No.
                             2017 CR 00798

JUDGMENT:                    Affirmed in part, reversed and
                             remanded in part

DATE OF JUDGMENT:            July 17, 2019

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

R. KYLE WITT                          JAMES A. ANZELMO
Fairfield County Prosecutor           446 Howland Drive
                                      Gahanna, Ohio 43230
By: CHRISTOPHER A. REAMER
Assistant Prosecuting Attorney
239 West Main Street, Suite 101
Lancaster, Ohio 43130

*Baldwin, J.*

**{¶1}** Defendant-appellant Matthew Warren appeals his conviction and sentence from the Fairfield County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On June 14, 2017, Detective Alex Sinewe of the Lancaster Police Department was dispatched to an address in Fairfield County to respond to a call that an unresponsive male named Matt had overdosed. When he arrived at the scene at around 5:00 p.m., he entered a home and found appellant in a chair unconscious "with a female standing over top of him slapping his face and chest telling him to wake up." Trial transcript at 57-58. The Detective called for the medics. He testified that he did not see any kind of drug paraphernalia in the house.

**{¶3}** While Detective Sinewe was in the house, the medics administered Narcan to appellant who continued fading in and out of consciousness. The Detective discovered that appellant had an outstanding warrant for his arrest and testified that he intended to place appellant under arrest after appellant received medical treatment at the hospital. Prior to the ambulance leaving to take appellant to the hospital, Detective Sinewe checked appellant's pockets and waistband "and anywhere where that (sic) he would possibly be able to conceal something." Trial Transcript at 66. He testified that he found "a small purple screw top container which we found contained a couple of unknown powders and white pills" along with car keys and other items. Trial Transcript at 68. The powder was in two baggies. At the time of the search, appellant was not conscious.

**{¶4}** There was testimony at trial that when appellant was in a state of consciousness, he told the medics that he had taken Heroin and Xanax. Appellant was

strapped in a gurney in the ambulance which was pursuant to standard medical protocol to ensure appellant's safety. While in the ambulance, appellant got out of the restraints and attempted to run. Appellant scuffled with the medics and it took three people to get appellant under control. One of the medics, Ruth Shahan, yelled to appellant that he was trying to run because he knew that the police were behind the ambulance. Appellant had indicated that he did not know that he had an outstanding warrant for his arrest. Appellant was then transported to the hospital.

{¶5} At trial, Keith Taggart, a forensic scientist testified that he tested the items found in appellant's pockets and that one of the items, an off-white powder weighing less than 09.1 grams, was found to contain fentanyl and carfentanil. He further testified that the other plastic baggie contained gabapentin, which is not a controlled substance. When asked if he was able to distinguish how much fentanyl and how much carfentanil was located in the one baggie, Taggart testified that their laboratory "does not quantitate how much substance is present." Trial transcript at 131. He testified that he did not know whether carfentanil is an analog to fentanyl. On redirect, he testified that the two are identified as separate and distinct Schedule II narcotics.

{¶6} Tyson Nye, a firefighter/paramedic, testified that appellant admitted to using heroin. He testified that when they got appellant out of the house, police informed them that appellant had an outstanding warrant for his arrest and that no one communicated that to appellant. Nye testified that he opened the back of the ambulance and was charged by appellant who hit Nye and almost knocked him backwards onto the pavement below. Nye testified that he could have been killed if he had hit his head on the pavement. There also was testimony that William Gibson, a firefighter, had a cut on his left elbow

and Ruth Shahan suffered leg and hand injuries due to appellant's continued struggle inside the ambulance. Gibson testified that he never informed appellant that there was an outstanding warrant and the he did not hear anyone convey that information to appellant. Photographs of the injuries were admitted at trial.

**{¶7}** On December 7, 2017, appellant was indicted on two counts of aggravated possession of drugs in violation of R.C. 2925.11(A) AND (C)(1)(a), felonies of the fifth degree, and one count of selling, purchasing, distributing or delivering dangerous drugs in violation of R.C. 4729.51(EW)(1)(c) and 4729.99, a misdemeanor of the first degree. At his arraignment on December 15, 2017, appellant entered a plea of not guilty to the charges. Appellant was appointed counsel at state expense. A superseding indictment was filed on January 25, 2018 that added three counts of assault in violation of R.C. 2903.13(a) and (C)(5), felonies of the fourth degree.

**{¶8}** On February 2, 2018, appellant filed a Motion to Suppress the drugs found in his pocket, arguing that they were found during an unconstitutional search. At his arraignment on February 5, 2018, appellant entered a plea of not guilty to the charges contained in the superseding indictment.

**{¶9}** Following a hearing held on February 28, 2018, the trial court denied appellant's Motion to Suppress. The trial court, in its April 26, 2018 Entry, found that Detective Sinewe's search of appellant's person was justified by probable cause and made incident to a valid arrest.

**{¶10}** Thereafter, a jury trial commenced on July 24, 2018. The jury found appellant guilty of the drug charges and guilty of assaulting Tyson Nye and Ruth Shahan, but not guilty of assaulting William Gibson.

{¶11} As memorialized in a Judgment Entry filed on August 10, 2018, appellant was sentenced to an aggregate prison sentence of four (4) years and seven (7) months. The trial court also ordered appellant to pay fines in the total amount of $6,450.00, but suspended the fines, and ordered appellant to pay court costs.

{¶12} Appellant now raises the following assignments of error on appeal:

{¶13} "I. THE TRIAL COURT ERRED BY DENYING WARREN'S MOTION TO SUPPRESS EVIDENCE THAT POLICE OBTAINED IN VIOLATION OF HIS RIGHT AGAINST UNREASONABLE SEARCHES AND SEIZURES GUARANTEED BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION."

{¶14} "II. THE TRIAL COURT ERRED BY NOT HOLDING A TRIAL ON THE ASSAULT CHARGES SEPARATE FROM THE DRUG POSSESSION CHARGES, IN VIOLATION OF HIS RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION."

{¶15} "III. MATTHEW WARREN'S CONVICTIONS FOR AGGRAVATED DRUG POSSESSION AND ASSAULT ARE BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION."

{¶16} "IV. MATTHEW WARREN'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED

STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION."

**{¶17}** "V. THE TRIAL COURT ERRONEOUSLY FAILED TO MERGE WARREN'S AGGRAVATED DRUG POSSESSION OFFENSES, IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

**{¶18}** "VI. WARREN RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."

I

**{¶19}** Appellant, in his first assignment of error, argues that the trial court erred in denying his Motion to Suppress.

**{¶20}** Appellate review of a trial court's decision to grant or deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 713 N.E.2d 1 (4th Dist. 1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 1996-Ohio-134, 661 N.E.2d 1030. A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State*

*v. Williams*, 86 Ohio App.3d 37,42, 619 N.E.2d 1141 (4th Dist. 1993), overruled on other grounds.

**{¶21}** There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist. 1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 620 N.E.2d 906 (8th Dist. 1994).

**{¶22}** Appellant specifically contends that the trial court erred in concluding that the Detective had reasonable suspicion of appellant's criminal activity and in concluding that the search was incident to an arrest.

**{¶23}** At the suppression hearing, Detective Alex Sinewe testified that he was familiar with appellant because he had had a "couple of dealings with [appellant] on different types of calls, suspicious person type calls." Transcript of Suppression hearing at 22. He tested that he was on a SWAT team that had dealings with appellant when they raided a house for drug trafficking.   The house was a known drug residence according

to the Detective.  The Detective further testified that it was normal routine to check any individual who was overdosing for any outstanding warrants through dispatch and that such an individual would have medical treatment prior to be arrested. Detective Sinewe further testified that when they were transporting an individual who was overdosing in an ambulance, there were safety concerns because drugs and weapons typically went hand in hand and that it was standard procedure to check any individual for weapons or other items that could cause injury to the EMT's.

{¶24} During the suppression hearing, Detective Sinewe testified that the house where appellant was located was known to law enforcement as a drug house where trafficking occurred.  Appellant's girlfriend, who was in the house, was a known drug user. Detective Sinewe testified that he believed that appellant stated that he had taken heroin and that he ran appellant for outstanding warrants and learned that appellant had an outstanding warrant for his arrest.  He testified that appellant was going to be arrested after he received medical treatment and that another individual in the house approached him and told him that appellant had drugs in his pocket.

{¶25} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibits the government from conducting unreasonable searches and seizures of persons or their property. *See Terry v. Ohio* , 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ; *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991). [A] full search of the person incident to a lawful custodial arrest is not only an exception to the warrant requirement of the Fourth Amendment but is also a 'reasonable' search under that amendment." *State v. Mathews,* 46 Ohio St.2d 72, 74, 346 N.E.2d 151 (1976), citing *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38

L.E.2d 427 (1973). Moreover, "[w]here the police officer has probable cause to arrest independent of the items obtained in the search, but does not arrest until shortly after the search, the search is not offensive to the Fourth Amendment to the United States Constitution." *State v. Bing,* 134 Ohio App.3d 444, 447–48, 731 N.E.2d 266 (9th Dist.1999), citing *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633, 645-646 (1980).

{¶26} In order to justify a search as one incident to arrest, there must be probable cause to arrest. *State v. Robinson,* 9th Dist. Wayne No. 10CA0022, 2012-Ohio-2428. The test for probable cause to arrest without a warrant is whether "the facts and circumstances known to the officer warrant a prudent man in believing the offense has been committed." *State v. Perez,* 124 Ohio St.3d 122, 920 N.E.2d 104, 2009–Ohio–6179, ¶ 73, quoting *Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

{¶27} In the case sub judice, Detective Sinewe searched appellant's person before he was arrested. While appellant was unconscious at the time:

> A search of one found in an unconscious condition is both legally permissible and highly necessary. There is a positive need to see if the person is carrying some indication of a medical history, the rapid discovery of which may save his life; there is also a need to identify persons so found in order to notify relatives or friends. That the cause of appellant's being unconscious was not known in no way impaired but rather enhanced the need and inherent power to search appellant.

*State v. Paidousis*, 10th Dist. Franklin No. 00AP–118, 2001 WL 436079 (May 1, 2001) at 4, citing to *Vauss v. United States*, 370 F.2d 250 (C.A.D.C.1966).

{¶28} In the case sub judice, there was testimony at the suppression hearing that Detective Sinew knew that appellant had an outstanding warrant for his arrest and that appellant was going to be taken into custody after receiving medical treatment. The Detective had probable cause to arrest appellant before searching him based on the outstanding warrant, the fact that appellant was a known drug user in a known drug house and was overdosing. Moreover, Sinewe overheard appellant admit to using heroin and Xanax and was told by another individual inside the house that appellant had drugs on him. We concur with appellee that Detective Sinewe could have lawfully arrested appellant for drug possession charges based on probable cause that appellant had just ingested an illegal drug. While appellant's need for medical treatment precluded the Detective from arresting appellant at the time of the search, as is stated above, the search and arrest need not be done simultaneously. As noted by the trial court, "it was not only reasonable but in the best interests of [appellant's] health to delay arrest."

{¶29} Based on the foregoing, we find that the search was incident to an arrest and that the trial court did not err in denying the Motion to Suppress.

{¶30} Appellant's first assignment of error is, therefore, overruled.

II

{¶31} Appellant, in his second assignment of error, contends that the trial court erred in not holding a trial on the assault charges separate from the drug possession charges.

**{¶32}** In general, the law favors joining multiple offenses in a single trial if the offenses charged "are of the same or similar character." *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990), citing *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981). Crim.R. 8(A), regarding joining offenses, provides that two or more offenses may be charged in the same indictment if they "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim.R. 13 also permits a court to "order two or more indictments * * * to be tried together, if the offenses * * * could have been joined in a single indictment[.]" Consequently, joinder is appropriate where the evidence is interlocking and the jury is capable of segregating the proof required for each offense. *State v. Czajka*, 101 Ohio App.3d 564, 577-578, 656 N.E.2d 9 (8th Dist.1995).

**{¶33}** Appellant argues that severance was warranted in his case because none of the conditions for joinder under Crim.R. 8(A) apply. Appellant notes that the assault charges and drug possession charges are completely independent and unrelated.

**{¶34}** Where it appears that the defendant will be prejudiced by joinder of offenses, the court may grant a separate trial of the counts. Crim.R. 14. Appellant however, concedes that he failed to move to sever. Appellant, therefore, has waived any error in the joinder of the offenses. *State v. Knight*, 20 Ohio App.3d. 289, 291, 485 N.E.2d 1064 (8th Dist. 1984).

**{¶35}** Moreover, appellant could not prevail on this issue had it been properly preserved. To prevail on a claim to sever counts, the defendant has the burden of demonstrating: 1) his rights were actually prejudiced; 2) at the time of the motion to sever,

the defendant provided the trial court with sufficient information so it could weigh the considerations favoring joinder against the potential prejudice to the defendant's right to a fair trial; and 3) given the information provided to the court, the court abused its discretion in refusing to sever the charges. and *Drew v. United States*, 331 *State v. Schaim*, 65 Ohio St.3d 51, 59, 1992-Ohio-31, 600 N.E.2d 661.

**{¶36}** An accused is not prejudiced by joinder when simple and direct evidence exists, regardless of the admissibility of evidence of other crimes under Evid.R. 404(B). *State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991).

**{¶37}** Appellant alleges that the trial court erred in not severing the charges against him. However, the record demonstrates that the trial court did not abuse its discretion where the offenses charged were connected and the evidence relating to each of the charged crimes was simple and direct. Appellant, in his brief, notes that the drug and possession charges were distinct.

**{¶38}** Appellant's second assignment of error is, therefore, overruled.

III, IV

**{¶39}** Appellant, in his third assignment of error, maintains that his convictions for aggravated drug possession and assault were based on insufficient evidence while, in his fourth assignment of error, he argues that his convictions were against the manifest weight of the evidence.

**{¶40}** The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d

259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held as follows: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶41} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387, 678 N.E.2d 541.   Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶42} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260, 674 N.E.2d 1159.

{¶43} Appellant, with respect to his convictions for aggravated possession of fentanyl and carfentanil, argues that there is insufficient evidence to support these

convictions because Taggart failed to conduct tests to determine whether the carfentanil was in fact carfentanil and not fentanyl or to determine whether the fentanyl was, in fact, fentanyl and not carfentanil. Appellant argues that these tests were needed since carfentanil is an analog of fentanyl.

**{¶44}** Both fentanyl and carfentanil are recognized under Ohio law as separate Schedule II controlled substances. R.C. 3719.41, Schedule II, (B)(6) & (9). In the case sub judice, at the trial, Taggart testified that these two were separate and distinct Schedule II narcotics and the jury was instructed that fentanyl and carfentanil were separate substances under Ohio law.

**{¶45}** Appellant also maintains that his convictions are against the manifest weight of the evidence. Appellant argues that the weight of the evidence fails to support his convictions for aggravated possession of drugs because Keith Taggart failed to conduct tests to determine whether the carfentanil was in fact carfentanil and not fentanyl and vice versa and because Taggart was not credible because he had been previously disciplined for not following protocol when conducting forensic testing and had been accused of changing test results. Taggart was questioned by appellant's counsel during cross-examination about a 2017 disciplinary investigation that Taggart was involved in at the Bureau of Criminal Identification and Investigation and testified that he was disciplined as a result and had received a thirty day suspension without pay. Taggart further testified that his cases during that time were re-analyzed and the findings concurred with his original findings. He testified that he and his supervisors had put in place new procedures to insure the accuracy of all later testing and that all testing done subsequent to his discipline had been reviewed by a peer. Taggart testified that he had testified in other

Ohio courts after this procedural break was identified and that he was recognized as competent to testify as to drug testing. Taggart testified that carfentanil and fentanyl were separate and distinct Schedule II narcotics and that both were specifically and independently identified. The jury, as trier of fact, was in the best position to assess his credibility.

{¶46} With respect to his assault convictions, appellant argues that there was no evidence that he acted knowingly to cause physical harm to the paramedics and that, therefore, his convictions for assault are against the manifest weight and sufficiency of the evidence.

{¶47} Appellant was charged and convicted of assault of a peace officer in violation of R.C. 2903.13(A) and (C)(5) which state the following:

{¶48} No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.

{¶49} (C)(5) If the victim of the offense is a peace officer or an investigator of the bureau of criminal identification and investigation, a firefighter, or a person performing emergency medical service, while in the performance of their official duties, assault is a felony of the fourth degree.

{¶50} R.C. 2901.22(B) states as follows, "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is

established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact."

{¶51} Although appellant may not have had the specific intent to harm the paramedics, there was testimony that he crashed into Tyson Nye and Ruth Shahan in an attempt to escape from the ambulance and that he continued to fight and struggle even after being ordered to stop. Nye testified that appellant plowed into him as he was holding onto the ambulance and that they struggled for a number of seconds. Nye further testified that he could have been killed if appellant had knocked him out and he hit his head on the pavement. In turn, Ruth Shahan testified, in relevant part, as follows:

{¶52} Q:  At some point in time after [appellant] makes contact with Mr. Nye at the back door area, do they come forward towards you?

{¶53} A:  Yes.

{¶54} Q:  Tell us about that?

{¶55} A:  They turned - - well, Matthew Warren [appellant] turned, started my direction and at that point I'm in his way, don't know - - I mean he's just coming at me. You don't know - - I don't know what's going to happen.  Is he going after me, is he going to tackle me, is he going to do what.  So – and Tyson saw this so Tyson at that point grabbed a hold of him and within all of this, I got pushed down onto the bench seat.  My leg got pinned, and smashed is not a good word, but pinned up against enough that it bruised my leg - - my knee as they were headed back towards the front of the truck to the other door.

{¶56} Q:  And so you are kind of pinned in or pushed somewhere up around the area of this right side door?

**{¶57}**  A:  Towards that door, yes.

**{¶58}**  Trial Transcript at 264-265.  She suffered leg and hand injuries.

**{¶59}**  We find, viewing the evidence in a light most favorable to the State, that appellant's actions are sufficient to demonstrate that he knew that his actions would "probably cause a certain result," i.e., an injury to the paramedics. We note that appellant was found not guilty of assaulting William Gibson, a firefighter/paramedic. Further, testimony established that the two paramedics suffered injury. Accordingly, appellant's challenge to the sufficiency of the evidence presented in support of his assault is overruled.

**{¶60}**  Based on the foregoing, we find that appellant's convictions are not against the manifest weight or sufficiency of the evidence. We find that, viewing the evidence in a light most favorable to the prosecution, any rational tier of fact could have found appellant committed the offenses of assault and drug possession and that the jury did not lose its way in convicting appellant.

**{¶61}**  Appellant's third and fourth assignments of error are, therefore, overruled.

V

**{¶62}**  Appellant, in his fifth assignment of error, asserts that the trial court erred in failing to merge appellant's two aggravated drug possession offenses.

**{¶63}**  The accused may raise a forfeited claim on appeal through Crim.R. 52(B). Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Court held in *State v. Rogers*, 143 Ohio St.3d 385, 2015–Ohio–2459, 38 N.E.3d 860:

An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. Accordingly, an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error.

**{¶64}** 2015–Ohio–2459, ¶ 3, 143 Ohio St.3d 385. The Court in *Rogers* reaffirmed that even if an accused shows the trial court committed plain error affecting the outcome of the proceeding, the appellate court is not required to correct it. Id. at ¶ 23. The Supreme Court stated:

**{¶65}** [W]e have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice.' " (Emphasis added.) *Barnes* at 27, 94 Ohio St.3d 21, 759 N.E.2d 1240, *quoting State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶66}** *Rogers* at ¶ 23.

**{¶67}** Because appellant did not raise the merger issue at trial, the plain-error standard applies.

**{¶68}** R.C. 2941.25 governs multiple counts and states the following:

{¶69} (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶70} (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶71} In *State v. Ruff,* 143 Ohio St.3d 114, 2015–Ohio–995, 34 N.E.3d 892, syllabus, the Supreme Court of Ohio held the following:

{¶72} 1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import.

{¶73} 2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

{¶74} 3. Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

{¶75} The *Ruff* court explained at ¶ 26:

At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

**{¶76}** In this case, appellant was convicted of possession of carfentanil and fentanyl. It is elementary that "[t]he simultaneous possession of different types of controlled substances can constitute multiple offenses under R.C. 2925.11." *State v. Delfino*, 22 Ohio St.3d 270, 490 N.E.2d 884 (1986), syllabus; *e.g., State v. Rice*, 5th Dist. Licking No. 16-CA-87, 2017-Ohio-1504, 2017 WL 1436378, ¶ 12, quoting *State v. Hughes*, 5th Dist. Coshocton No. 15CA0008, 2016-Ohio-880, 60 N.E.3d 765, ¶ 25, quoting *Houston v. Erdos*, S.D.Ohio No. 1:14–CV–956, 2016 WL 126896, *12 (Jan. 12, 2016) (citations omitted) (noting that Ohio courts have agreed the legislature clearly intended possession of different drugs to constitute separate offenses, and thus, if

different drugs and different bulk amounts are involved, "[m]erger as allied offenses is simply not correct * * *").

**{¶77}** Thus, the trial court did not commit plain error in not merging appellant's convictions for possession of carfentanil and fentanyl.

**{¶78}** Appellant's fifth assignment of error is, therefore, overruled.

VI

**{¶79}** Appellant, in his sixth and final assignment of error, claims that he received ineffective assistance of trial counsel.

**{¶80}** Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ohio adopted this standard in the case of *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.*

**{¶81}** Trial counsel is entitled to a strong presumption all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 1998-Ohio-343, 693 N.E.2d 267. In addition, the United States Supreme Court and the

Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, *quoting Strickland* at 697. Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

**{¶82}** Appellant argues that his trial counsel was ineffective because trial counsel failed to move for a waiver of fines and court costs and because trial counsel failed to move for merger of the aggravated drug possession convictions.

**{¶83}** First, as to appellant's argument regarding merger, as previously discussed, we found that the two aggravated drug possession convictions do not merge. Appellant cannot, therefore, demonstrate prejudice.

**{¶84}** As to appellant's court costs argument, in *State v. Harris*, 5th Dist. Muskingum No. CT2018-0005, 2018-Ohio-2257, ¶ 47, this court reviewed this exact issue and determined the following:

> We find no merit in Appellant's allegation that he received ineffective assistance of counsel as a result of his attorney failing to request that the trial court waive court costs. Because R.C. § 2947.23(C) grants Appellant the ability to seek waiver of costs at any time, including after sentencing, Appellant has not been prejudiced by the failure of his counsel to request a waiver at sentencing.

**{¶85}** Finally, appellant argues that his trial counsel was ineffective in failing to ask the trial court to waive fines due to indigency. We note that appellant filed an affidavit of indigency on December 20, 2017. At the sentencing hearing, the trial court imposed

$6,450.00 in fines, but suspended the fines due to appellant's indigency and stated that it was going to give appellant time to pay the fines.

{¶86}  R.C. 2929.18(A)(3) states, in relevant part, as follows:

{¶87}  (3) Except as provided in division (B)(1), (3), or (4) of this section, a fine payable by the offender to the state, to a political subdivision when appropriate for a felony, or as described in division (B)(2) of this section to one or more law enforcement agencies, in the following amount:

{¶88}  (a) For a felony of the first degree, not more than twenty thousand dollars;

{¶89}  (b) For a felony of the second degree, not more than fifteen thousand dollars;

{¶90}  (c) For a felony of the third degree, not more than ten thousand dollars;

{¶91}  (d) For a felony of the fourth degree, not more than five thousand dollars;

{¶92}  (e) For a felony of the fifth degree, not more than two thousand five hundred dollars.

{¶93}  In *State v. Webb,* 5th Dist. Richland No. 14–CA–85, 2015–Ohio–3318, 2015 WL 4899511, this Court held:

> Further, Ohio law does not prohibit a court from imposing a fine on an "indigent" defendant. That is, the filing of an affidavit of indigency does not automatically entitle a defendant to a waiver of a mandatory fine. *State v. Knox*, 8th Dist. Cuyahoga Nos. 98713 and 98805, 2013-Ohio-1662, [2013 WL 1791391], ¶ 36. Under Ohio law, a trial court must impose a mandatory fine unless (1) the offender files an affidavit of indigency prior to sentencing, and (2) "the trial court finds that the offender is an indigent person and is

unable to pay the mandatory fines." *State v. Gipson*, 80 Ohio St.3d 626, 634, 687 N.E.2d 750 (1998). In making its indigency determination, the court must consider both the offender's present and future ability to pay the fine. R.C. § 2929.19(B)(5).

Additionally, the trial court need not make an "affirmative finding that an offender is able to pay a mandatory fine." *Id.* at 635 [687 N.E.2d 750]. Instead, "the burden is upon the offender to affirmatively demonstrate that he or she is indigent and is unable to pay the mandatory fine." *Id.* We review the trial court's decision to impose a fine on an indigent defendant for an abuse of discretion. *State v. Ficklin*, 8th Dist. Cuyahoga No. 99191, 2013-Ohio-3002, [2013 WL 3583030], ¶ 5.

5th Dist. Richland No. 14–CA–85, 2015–Ohio–3318, ¶ 23-¶ 24.

**{¶94}** R.C. § 2929.19(B)(5) reads,

**{¶95}** (B)(5) Before imposing a financial sanction under section 2929.18 of the Revised Code or a fine under section 2929.32 of the Revised Code, the court shall consider the offender's present and future ability to pay the amount of the sanction or fine.

**{¶96}** The Ohio Supreme Court, however, has held that even if an affidavit of indigency is timely and properly filed, a defendant "is not automatically entitled to waiver of that fine." *State v. Gipson*, 80 Ohio St.3d 626, 634, 1998-Ohio-659, 687 N.E.2d 750. There must be a showing that a defendant is unable to pay the fines, and there is no affirmative duty on the trial court to make a finding that a defendant is able to pay. *Id.,* see syllabus.

**{¶97}** When a criminal defendant can show that his counsel's performance was deficient and that the deficient performance was prejudicial to his case, there is constitutional error. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). Thus, even if the trial court did not err in imposing the fine, we must consider whether counsel's failure to file an affidavit caused a prejudicial result. A number of Ohio courts have recognized that failure to file an affidavit of indigency, under the right circumstances, can constitute prejudicial error. *E.g., State v. Mendoza*, 6th Dist. Lucas App. No. L-94-242, 1995 WL 413143, at 3 (July 14, 1995); *State v. Joy*, 4th Dit. Lawrence App. Nos. 92 CA 24, 92 CA 30, 1993 WL 491325, at 3 (Nov. 24, 1993); *State v. Creech*, 4th Dist. Scioto App. No. 92 CA 2053, 1993 WL 235566 at 6 (June 29, 1993).

**{¶98}** In *State v. Sheffield,* 2nd Dist. Montgomery App. No. 20029, 2004-Ohio-3099, at ¶ 13, the court  stated at paragraph 14:

> The failure to file an affidavit of indigency prior to sentencing may constitute ineffective assistance of counsel if the record shows a reasonable probability that the trial court would have found Defendant indigent and relieved him of the obligation to pay the fine had the affidavit been filed. *State v. Cochran* (June 5, 1998), Clark App. No. 97CA50; *State v. Stearns* (Oct. 9, 1997), Cuyahoga App. No. 71851; *State v. Gilmer* (April 26, 2002), Ottawa App. No. OT-01-015, 2002-Ohio-2045; *State v. McDowell* (Sept. 30, 2003), Portage App. No.2001-P-0149, 2003-Ohio-5352; *State v. Powell* (1992), 78 Ohio App.3d 784, 787, 605 N.E.2d 1337; *State v. Williams* (1995), 105 Ohio App.3d 471, 482, 664 N.E.2d 576.

**{¶99}** In reviewing trial counsel's failure to file an affidavit of indigency, ineffective assistance may be found if the record reveals a reasonable probability that the trial court would have found the defendant indigent and unable to pay the fine. See *State v. Williams,* 105 Ohio App.3d 471, 482, 664 N.E.2d 576 (8th Dist, 1995); *State v. Stearns* (Oct. 9, 1997), Cuyahoga App. No. 71851, 1997 WL 626024 at 3 (Oct. 9, 1997). Because information regarding an appellant's finances would most often lie outside the record on direct appeal, the appropriate place to pursue this question will generally be in a hearing for post-conviction relief under R.C. 2953.21. See *State v. Booker*, 63 Ohio App.3d 459, 466, 579 N.E.2d 264 (2nd Dist. 1989).

**{¶100}** We note that appellant was represented by appointed counsel. Thus, there was necessarily a determination made that he was indigent under Chapter 120 of the Revised Code. While we recognize that there is a difference between indigency for the purposes of receiving appointed counsel and inability to pay a mandatory fine (See *Powell,* 78 Ohio App.3d at 789, 605 N.E.2d 1337), we note that the affidavit that was filed on December 20, 2017  indicated that appellant was unemployed, homeless and had no income. While the presentence investigation report does not contain any information about appellant's medical or work history, it details appellant's extensive criminal history.

**{¶101}** Based on these facts and circumstances, we conclude that a reasonable probability exists that the trial court would have found Defendant indigent had his trial counsel filed an affidavit of indigency prior to sentencing and the trial counsel was ineffective in failing to move for waiver of the fines.

**{¶102}** Appellant's sixth assignment of error is, therefore, sustained.

{¶103}      Accordingly, the judgment of the Fairfield County Court of Common Pleas is affirmed in part and reversed and remanded in part. This matter is remanded to the trial court for a hearing in order to determine whether appellant is indigent for the purpose of avoiding the mandatory fines imposed by statute.

By Baldwin, J.

Gwin, P.J. and

Wise, John, J. concur