[Cite as *State v. Redden*, 2020-Ohio-878.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 19-COA-026 |
| | : | |
| JAMES F. REDDEN | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Ashland County Court of Common Pleas, Case No. 18-CRI-195 |
| JUDGMENT: | AFFIRMED IN PART, REVERSED IN PART, SENTENCE VACATED AND REMANDED |
| DATE OF JUDGMENT ENTRY: | March 6, 2020 |

APPEARANCES:

For Plaintiff-Appellee:

CHRISTOPHER R. TUNNELL
ASHLAND CO. PROSECUTOR
COLE F. OBERLI
110 Cottage St.
Ashland, OH 44805

For Defendant-Appellant:

MATTHEW J. MALONE
10 East Main St.
Ashland, OH 44805

*Delaney, J.*

{¶1} Appellant James F. Redden appeals from the June 27, 2019 judgment entry of sentence of the Ashland County Court of Common Pleas. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} This case arose in September 2018 when Detective Brian Evans received a complaint that methamphetamine was manufactured at 506 W. Tenth Street, Ashland, by appellant.

{¶3} Evans' first step was to contact METRICH, an inter-agency narcotics investigation unit, for information about purchases of Sudafed and similar cold medicine. Evans accessed NPlex, a law enforcement database cross-referencing purchases of Sudafed and cold medicines containing Pseudoephedrine, a component in the manufacture of methamphetamine. Evans found two purchases by appellant, both at area Wal-Mart locations, on September 15 and October 13.

{¶4} Evans launched an investigation of appellant, his associates, and the address where appellant was staying: 506 W. Tenth Street. Evans learned Rhonda Shanks was a frequent visitor to the address, and running her name through NPlex yielded several purchases of Pseudoephedrine on October 3. Evans observed "Skip" Shenberger, another of appellant's associates, with appellant at a local Wal-Mart on October 27. The same day, NPlex revealed Shenberger purchased Pseudoephedrine. Surveillance at 506 W. Tenth Street indicated Barbara Baker also stopped by and dropped off a small bag to appellant.

{¶5} During this surveillance, police observed appellant walk to the abandoned house next door—502 W. Tenth Street--with its owner, Donald Bratton. Bratton testified

at trial that appellant approached him about buying the property, even though it was not for sale and was in a state of "major disrepair." Nevertheless, appellant was interested in buying it, and agreed to pay Bratton $2500 on land contract. Bratton had placed a padlock on the door of the house. On the day they were observed by police, Bratton brought appellant over to the property to point out various issues.

{¶6} Based upon his investigation into the meth operation, Evans prepared an affidavit for a search warrant to search 506 W. Tenth Street including appellant's vehicle, boat, cell phone, and person. Police intended to serve the search warrant on October 29, 2018, but extra caution was required due to the hazardous nature of chemicals used in methamphetamine preparation. As police watched the house, they noticed appellant go next door with Bratton and decided to wait to serve the warrant until the next day.

{¶7} While in the neighborhood the next day, Evans unexpectedly encountered appellant walking a few blocks away from the residence. Evans and another detective stopped appellant, spoke to him, and advised they had a search warrant for his residence. Appellant and Evans spoke briefly. Appellant agreed to accompany detectives back to the residence and the search warrant was executed.

{¶8} The search of 506 W. Tenth Street--the residence where appellant lived with Eugene Milkey--yielded aluminum foil, Pseudoephedrine pills, a digital scale, a funnel, filters, Ziploc baggies, gloves, suspected narcotics, lithium strips, lithium batteries, and cold packs. Evans testified these items are consistent with the "cooking" of methamphetamine.

{¶9} With Britton's permission, police also searched the abandoned property at 502 W. Tenth Street. Before they could search, Britton realized the padlock on the

property was not his. Police spoke to appellant and learned he had placed his own padlock on the property. At 502 W. Tenth Street, police found a Rite-Aid receipt with appellant's name on it, a cold-pack box, a Pseudoephedrine blister pack, an aluminum casing for a lithium battery, a lithium strip, blue rubber gloves, and two lighter-fuel containers. Evans testified these items are also consistent with the "cooking" of methamphetamine.

{¶10} Detective Richard Clapp of the Mansfield Police Department was called in to assist in cleanup of hazardous materials found at 502 and 506 W. Tenth Street. Clapp testified the materials are consistent with the preparation and manufacture of methamphetamine by the "shake and bake" method in which methamphetamine is prepared in a container such as a Gatorade bottle.

{¶11} Appellee called several of appellant's accomplices as trial witnesses. Rhonda Shanks testified she has known appellant for a few years and he asked her to help him find a place to live where he could "cook." Shanks connected appellant with Eugene Milkey, who permitted appellant to live in a bedroom in his residence at 506 W. Tenth Street. Appellant provided Shanks and Milkey with methamphetamine to smoke. Shanks testified appellant asked her to purchase Pseudoephedrine for him and she agreed to do so in exchange for meth. Shanks testified she bought Sudafed at Wal-Mart, Rite-Aid, and CVS in October 2018. Shanks also testified that appellant once asked her to hold a bottle with a hose attached.

{¶12} Milkey testified appellant provided him with a white substance which he smoked through aluminum foil.

{¶13} "Skip" Shenberger testified he met appellant at Milkey's house and got high with him. Appellant provided Shenberger with an unknown yellow substance; Shenberger didn't know what it was but asked to buy $100 more of it. Shenberger also purchased Sudafed from Wal-Mart for appellant.

{¶14} Barbara Baker is familiar with appellant and occasionally allowed him to borrow her vehicle. She purchased Claritin-D for appellant at Wal-Mart and CVS.

{¶15} A Wal-Mart witness provided security videotape of several of the transactions in which Pseudoephedrine was purchased by Shanks on September 17, by Baker on October 13, by Shenberger on October 27, 2018, and by an unknown male on September 15.

{¶16} A B.C.I. forensic scientist testified that appellee's Exhibit 1, a plastic baggie containing residue, tested positive as methamphetamine.

{¶17} Appellant called one witness on his behalf, Detective Wayne Liggett of the Richland County Sheriff's Office. Liggett was not involved in the investigation but assisted in the cleanup of hazardous materials generated by the preparation of methamphetamine. Liggett acknowledged that a report he prepared misidentified appellant as James Story, which Liggett explained as a clerical error.

{¶18} Appellant was charged by indictment with one count of illegal manufacture of drugs [methamphetamine] pursuant to R.C. 2925.04(A), a felony of the second degree [Count I]; illegal assembly or possession of chemicals for manufacture of drugs pursuant to R.C. 2925.041(A), a felony of the third degree [Count II]; and one count of aggravated trafficking in drugs [methamphetamine] pursuant to R.C. 2925.03(A)(1), a felony of the fourth degree [Count III]. Appellant entered pleas of not guilty.

{¶19} On December 21, 2018, appellant filed a motion to suppress his statements "as a result of un-mirandized custodial interrogation." Appellee responded with a memorandum in opposition. The matter proceeded to an evidentiary hearing on January 28, 2019, and the trial court gave the parties an opportunity to file post-hearing memoranda. By Judgment Entry filed March 1, 2019, the trial court granted the motion to suppress in part and overruled it in part. Appellant's statements to Evans when he was stopped on the street were suppressed; appellant's later statements at the residence and at the Ashland County Jail were not suppressed.

{¶20} The matter proceeded to trial by jury on April 30, 2019, concluding May 2, 2019, and appellant was found guilty as charged. Sentencing was deferred pending a pre-sentence investigation (P.S.I), which has been filed under seal for our review.

{¶21} Appellant appeared for sentencing on June 24, 2019. The trial court imposed a prison term of 5 years upon Count I, 2 years upon Count II, and 18 months upon Count III. The trial court further noted appellant committed the instant offenses while on post-release control, thus an additional 12-month sentence was imposed for the P.R.C. violation. The prison terms are to be served consecutively for a total aggregate sentence of nine and a half years.

{¶22} Appellant now appeals from the trial court's June 27, 2019 Judgment Entry—Sentencing.

{¶23} Appellant raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶24} "I. THE TRIAL COURT ERRED IN ITS DETERMINATION OF APPELLANT'S MOTION TO SUPPRESS."

{¶25} "II.    APPELLANT'S TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL."

{¶26} "III.   THE TRIAL COURT ERRED BY SENTENCING APPELLANT ON COUNTS WHICH WERE ALLIED OFFENSES OF SIMILAR IMPORT WHICH SHOULD HAVE MERGED FOR SENTENCING PURPOSES."

**ANALYSIS**

I.

{¶27} In his first assignment of error, appellant argues the trial court erred in overruling his motion to suppress.  We disagree.

{¶28} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact.  *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998).  During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility.  *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996).  A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.  *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996).  Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard.  *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶29} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal.  First, an appellant may challenge the trial court's finding of fact.  In

reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶30} In the instant case, appellant argues the trial court incorrectly decided the ultimate issue posed by the motion to suppress, to wit, that Evans' purported "two-step interrogation process" thwarted appellant's right to remain silent. Evidence at the suppression hearing established that Evans questioned appellant during three "phases" of the investigation: first, when Evans encountered appellant on Cottage Street; second, when appellant returned to the residence with Evans while the search warrant was executed; and third, while appellant was held at the Ashland County Jail. Evans Mirandized appellant after "phase one." Appellant stated that he understood. While he waited with Evans at the residence during "phase two," he willingly spoke to the detective and did not invoke his right to remain silent. This conversation occurred approximately 25 minutes after Evans had Mirandized appellant a few blocks away on Cottage Street. The search took several hours, after which appellant was arrested and transported to the

Ashland County Jail.  On October 31, 2018, Evans spoke with appellant at the Jail ("phase three") without re-Mirandizing him, but appellant was still aware of his rights because he asked Evans about the implications of making a statement "off the record."

{¶31} The trial court ultimately suppressed appellant's statements during "phase one" but found the post-Miranda statements during phases two and three admissible.

{¶32} Appellant now argues that all of his statements should have been excluded because they were an extension of his conversation with Evans in "phase one."  The record established, though, "that the Miranda warning was effectively communicated to and understood by [appellant]."  Judgment Entry, 2.  The Fifth Amendment to the United States Constitution guarantees that "'[n]o person * * * shall be compelled in any criminal case to be a witness against himself,' and that 'the accused shall * * * have the Assistance of Counsel.'" (*Ellipses sic.*) *Miranda v. Arizona,* 384 U.S. 436, 442, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In light of the inherent coercion involved in custodial interrogation, *Miranda* established "a set of prophylactic measures" to safeguard the constitutional privilege against self-incrimination. *Id.* In broad terms, *Miranda* held that the state may not use a defendant's statements from custodial interrogation "unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda* at 444. Prior to questioning, the police must warn the suspect "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* The Supreme Court recognized the importance of a suspect's "real understanding" of his rights and his intelligent decision whether to exercise them. *Id.* at 469, 86 S.Ct. 1602.

{¶33} *Miranda* conditioned the admissibility at trial of any custodial confession on warning a suspect of his rights: failure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained. *Missouri v. Seibert*, 542 U.S. 600, 608, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004).

{¶34} Appellant argues Evans' successive questioning constitutes a "*Seibert* violation." In *Seibert*, supra, the United States Supreme Court addressed the issue of whether the technique of successive interrogations, the first before *Miranda* warnings and the other(s) after, violated a defendant's *Miranda* rights. The suspect was taken to the police station for questioning after a fire at her home resulted in the death of one of the residents. She was questioned about the incident without first being provided her *Miranda* warnings and she made incriminating statements. The suspect was then issued her *Miranda* warnings and was confronted with the statements she had made before she was provided such warnings; she then confirmed her previous statements.

{¶35} The Court was troubled by the adherence to litigating the question of voluntariness where *Miranda* warnings were not given until after law enforcement had obtained a confession. 542 U.S. at 609. The Court held that the following factors should be considered in determining whether *Miranda* warnings delivered midstream could be effective enough to accomplish their object: "the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." *Id.* at 615; *see, State v. Bonnell,* 5th Dist. Delaware No. 07

CAA 01 0006, 2008–Ohio–28, ¶ 37; *State v. Furniss*, 5th Dist. Fairfield No. 12-CA-41, 2013-Ohio-2064, ¶ 22.

{¶36} As noted by the Ohio Supreme Court in *State v. Farris*, 109 Ohio St.3d 519, 2006–Ohio–3255, 849 N.E.2d 985, "*Seibert* points out that in 'question first' scenarios when the circumstances of the given case show that the *Miranda* warning could not reasonably be found effective, the post warning statements are inadmissible because 'the earlier and later statements are realistically seen as parts of a single, unwarned sequence of questioning.' *Id.* at 612, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643, fn. 4." *Farris,* ¶ 21.

{¶37} We find no such "single, unwarned sequence" in the instant case. Phase one of Evans' questioning of appellant took approximately 10 minutes at the side of the road. Statements made during that phase, pre-Miranda warnings, were suppressed. The trial court further found that *Seibert* is inapplicable to appellant's statements in phases two and three because there was no lengthy, exhaustive interrogation prior to Evans' *Miranda* warning and we agree. This case is factually distinguishable from *Seibert* and its rationale does not apply.

{¶38} Upon our review of the record, we find that the trial court was correct in granting appellant's motion to suppress his statements in phase one, and correct in overruling the motion as to phases two and three. Given the length of time and difference of places between the two statements, the connection between the two statements "was sufficiently attenuated as to dissipate the taint of his suppressed statements." *Furniss*, supra, 2013-Ohio-2064, at ¶ 22. We agree with the trial court that the instant case is distinguishable from *Seibert* in that the first round of interrogation was neither complete

nor detailed, nor did the phases overlap to the extent that they might be deemed "continuous." The evidence also indicates that during phase three at the jail, appellant remained sufficiently aware of his rights to the extent that he suggested making a statement "off the record."

{¶39} We conclude, therefore, that the trial court did not err in overruling the motion to suppress in part and granting it in part. Appellant's first assignment of error is overruled.

II.

{¶40} In his second assignment of error, appellant argues defense trial counsel was ineffective in failing both to file an affidavit of indigence and to move to waive mandatory fines. In light of the Ohio Supreme Court's recent decision in *State v. Davis*, Slip Opinion No. 2020-Ohio-309, --N.E.3d--, on the record of the instant case, we agree.

{¶41} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See*, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶42} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same

way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶43} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶44} R.C. 2929.19(B)(5) states, "Before imposing a financial sanction under section 2929.18 of the Revised Code or a fine under section 2929.32 of the Revised Code, the court shall consider the offender's present and future ability to pay the amount of the sanction or fine." The Ohio Supreme Court has held that even if an affidavit of indigency is timely and properly filed, a defendant "is not automatically entitled to waiver of that fine." *State v. Gipson*, 80 Ohio St.3d 626, 634, 1998-Ohio-659, 687 N.E.2d 750. There must be a showing that a defendant is unable to pay the fines, and there is no affirmative duty on the trial court to make a finding that a defendant is able to pay. *Id.,* syllabus.

{¶45} Appellant argues defense trial counsel was ineffective in failing to file an affidavit of indigence and to move to waive the mandatory fines. We note appellant did file an affidavit of indigency at the first hearing before the trial court, and he was found to be indigent at both the bond hearing on November 2, 2019 and at sentencing on June 24, 2019.

{¶46} When a criminal defendant can show that his counsel's performance was deficient and that the deficient performance was prejudicial to his case, there is

constitutional error. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). Thus, even if the trial court did not err in imposing the fine, we must consider whether counsel's failure to file an affidavit caused a prejudicial result. A number of Ohio courts have recognized that failure to file an affidavit of indigency, under the right circumstances, can constitute prejudicial error. *E.g., State v. Mendoza*, 6th Dist. Lucas App. No. L-94-242, 1995 WL 413143, at 3 (July 14, 1995); *State v. Joy*, 4th Dist. Lawrence App. Nos. 92 CA 24, 92 CA 30, 1993 WL 491325, at 3 (Nov. 24, 1993); *State v. Creech*, 4th Dist. Scioto App. No. 92 CA 2053, 1993 WL 235566 at 6 (June 29, 1993).

{¶47} In *State v. Sheffield,* 2nd Dist. Montgomery App. No. 20029, 2004-Ohio-3099, at ¶ 13, the court stated at paragraph 14:

> The failure to file an affidavit of indigency prior to sentencing may constitute ineffective assistance of counsel if the record shows a reasonable probability that the trial court would have found Defendant indigent and relieved him of the obligation to pay the fine had the affidavit been filed. *State v. Cochran* (June 5, 1998), Clark App. No. 97CA50; *State v. Stearns* (Oct. 9, 1997), Cuyahoga App. No. 71851; *State v. Gilmer* (April 26, 2002), Ottawa App. No. OT-01-015, 2002-Ohio-2045; *State v. McDowell* (Sept. 30, 2003), Portage App. No.2001-P-0149, 2003-Ohio-5352; *State v. Powell* (1992), 78 Ohio App.3d 784, 787, 605 N.E.2d 1337; *State v. Williams* (1995), 105 Ohio App.3d 471, 482, 664 N.E.2d 576.

{¶48} While we have previously rejected appellant's argument, *State v. Shaw*, 5th Dist. Muskingum No. CT2018-0054, 2019-Ohio-2387, ¶ 21, the Ohio Supreme Court

recently held that "[t]he court of appeals * * * must look at all the circumstances that the defendant sets forth in attempting to demonstrate prejudice and determine whether there is a reasonable probability that the trial court would have granted a motion to waive costs had one been made." *State v. Davis*, Slip Opinion No. 2020-Ohio-309, --N.E.3d--, ¶ 16.

{¶49} We have previously noted that where an appellant is represented by appointed counsel, and there was thus necessarily a determination made that he was indigent under Chapter 120 of the Revised Code, a reasonable probability exists that the trial court would have found appellant indigent had his trial counsel filed an affidavit of indigency prior to sentencing and the trial counsel was ineffective in failing to move for waiver of the fines. *State v. Warren*, 5th Dist. Fairfield No. 18-CA-42, 2019-Ohio-2927, ¶ 102. In the instant case, we find a reasonable probability exists that the trial court would have found appellant indigent had an affidavit been filed prior to sentencing and that the fines may have been waived. We note the P.S.I. indicates appellant was unemployed with no assets prior to sentencing.

{¶50} Accordingly, appellant's second assignment of error is sustained and this matter is remanded to the trial court for a hearing in order to determine whether appellant is indigent for the purpose of avoiding the mandatory fines imposed by statute. *Warren*, supra, 2019-Ohio-2927 at ¶ 103.

III.

{¶51} In his third assignment of error, appellant argues his convictions upon Counts I and II are allied offense of similar import which should have merged for purposes of sentencing. Under the circumstances of this case, we agree.

{¶52} R.C. 2941.25, Ohio's allied offense statute, provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶53} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Supreme Court of Ohio explained that "the same conduct can be separately punished if that conduct constitutes offenses of *dissimilar* import." *Id.* at ¶ 20, citing R.C. 2941.25(B). Offenses are dissimilar in import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at paragraph two of the syllabus.

{¶54} Appellee points out that appellant did not argue the offenses should merge at the trial level. In *State v. Rogers*, 143 Ohio St.3d 385, the Ohio Supreme Court held that where a defendant fails to seek the merger of his convictions as allied offenses of similar import in the trial court, he forfeits any allied offenses claim, except to the extent it constitutes plain error. *Rogers* at ¶ 21–25, citing *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15–16. "Crim.R. 52(B) affords appellate courts

discretion to correct '[p]lain errors or defects affecting substantial rights' notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court." *Rogers* at ¶ 22. The defendant "bears the burden of proof to demonstrate plain error on the record." *Id.*, citing *Quarterman* at ¶ 16. To demonstrate plain error, the defendant must show "'an error, i.e., a deviation from a legal rule' that constitutes 'an "obvious" defect in the trial proceedings'" and that the error affected a substantial right, i.e., the defendant must demonstrate a "reasonable probability" that the error resulted in prejudice, affecting the outcome of the trial. *Rogers* at ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). "We recognize plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Lyndhurst v. Smith,* 8th Dist. Cuyahoga No. 101019, 2015-Ohio-2512, 2015 WL 3899130, ¶ 32, quoting *State v. Landrum*, 53 Ohio St.3d 107, 110, 559 N.E.2d 710 (1990).

{¶55} We have therefore examined the record for evidence that appellant's conduct constituted two or more offenses of dissimilar import, or resulted in two or more offenses of the same or similar kind committed separately or with a separate animus to each.   At the trial level, appellee argued the same conduct constituted two separate offenses.  We note the bill of particulars filed January 4, 2019 cites the same conduct in Counts I and II in paragraphs that are effectively identical, to wit, the purchases of Pseudoephedrine by appellant and others who provided it to appellant for the purpose of appellant's manufacture of methamphetamine.

{¶56} In closing argument, appellee argued proof of Count I provided the proof of Count II, citing the same evidence to the following extent:

* * * *.

So when you add these together, and this is manufacture or engage in the production of methamphetamine is only but one result, guilty. And going back to my math equation from earlier, we have three counts, to Count 1, Count 2, and Count 3.

So I am going to do three math problems for you, 1 plus 1, plus 1, equals 3. Count 1 is guilty, and I have to do the same exercise three times, so I have to show 1 plus 1, plus 1 equals 3.

* * * *.

But you are going to hear me repeat the same thing maybe a few times because I have to show how each one of those go together. So on Count 2, we have the Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs, and we have the ID and he's wearing the pants, and he asked Mr. Shenberger and Ms. Shanks and Ms. Baker to get the Sudafed, and asking him to get the Sudafed or Claritin D, and also have Detective Evans testify about the Defendant.

* * * *.

T. 369-370.

{¶57} Upon review of the bill of particulars and the closing argument of appellee, and applying *Ruff*, supra, we must conclude that Counts I and II should have merged for purposes of sentencing. The two counts were of similar import, were committed at the same time and were not committed with a separate animus or motivation.

{¶58} The trial court imposed a prison term of 5 years upon Count I and 2 years upon Count II, to be served consecutively to each other and to an 18-month term upon Count III and a 12-month sanction for revocation of post-release control. The sentences for all counts were ordered to be served consecutively. The order of consecutive service means that recognition of plain error would affect the length of appellant's sentence. *State v. DeGarmo*, 5th Dist. Muskingum No. CT2018-0061, 2019-Ohio-4050, ¶ 32, appeal not allowed, 157 Ohio St.3d 1562, 2020-Ohio-313, 138 N.E.3d 115. We therefore find a manifest miscarriage of justice would occur if the counts were not merged. *Id.*

{¶59} Appellant was convicted of one count of illegal manufacture of drugs in violation of R.C. 2924.04(A), which states: "No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance."

{¶60} Appellant was also convicted of one count of illegal assembly or possession of chemicals used to manufacture controlled substance with intent to manufacture controlled substance in violation of R.C. 2925.041(A), stating: "No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code."

{¶61} In *State v. Woods*, 5th Dist. Ashland No. 15-COA-036, 2016-Ohio-4830, at ¶ 16-25, we reviewed with approval our decision in *State v. Carr,* 5th Dist. Perry No. 15CA00007, 2016–Ohio–9. Both *Woods* and *Carr* address the issue raised by appellant herein, and we find both decisions significant to the instant case:

In the case at bar, it was clear when the police entered the home that methamphetamine had been manufactured inside the home. Carr admitted to manufacturing methamphetamine.

Plastic tubing, baggies, envelopes, plastic bottles, batteries, cold compact bags, aquarium rocks and coffee filters are not "chemicals" as required under R.C. 2925.041. None of the active ingredient such as pseudoephedrine [Footnote omitted] was found; rather, only the discarded boxes were recovered from the trash. In his statement to the police, Carr stated that other parties provided the necessary ingredients.

Just as a baker would need flour to "assemble" or "manufacture" a cake, it is scientifically impossible to manufacture methamphetamine without the raw chemical ingredients, such as pseudoephedrine. In other words, every time a person commences a "cook" he or she must necessarily possess the requisite raw chemical ingredients necessary to manufacture the end product of crystal methamphetamine. Thus, a defendant must always "knowingly assemble or possess one or more chemicals that may be used to manufacture" methamphetamine with the "intent to manufacture."

If the police had entered the home and found, for example, 50 boxes of pseudoephedrine and nothing more, a case could be made for illegal assembly. It is not illegal to possess pseudoephedrine, but

the unexplained possession of such a large amount would be circumstantial evidence. If the state can establish the mens rea of "with the intent to manufacture" a defendant can be convicted of assembly or possession in violation of R.C. 2925.041.

Applying the facts and viewing Carr's conduct in this case, illegal manufacture of drugs in violation of R.C. 2924.04 and illegal assembly or possession of chemicals used to manufacture controlled substance with intent to manufacture controlled substance in violation of R.C. 2925.041 did not cause separate, identifiable harm. Carr did not commit the offenses separately nor were the two offenses committed with separate animus or motivation. Carr's motivation and animus for obtaining and/or assembling the chemicals was to manufacture methamphetamine.

Accordingly, we find the assembly or possession of the chemicals and the manufacture of methamphetamine are allied offenses. *Accord, State v. Coleman,* 5th Dist. Richland No. 14–CA–82, 2015–Ohio–3907, ¶ 52; *See, State v. Davidson,* 5th Dist. Perry No. 12 CA 7, 2013–Ohio–194, ¶ 47(applying the pre-*Ruff* allied offenses test set forth in *State v. Johnson,* 128 Ohio St.3d 153, 942 N.E.2d 1061, 2010–Ohio–6314); *State v. Stevenson,* 5th Dist. Perry No. 09CA16, 2010–Ohio–2060, ¶ 32 (applying the pre-*Ruff* allied offenses test set forth in *State v. Cabrales,* 118 Ohio St .3d 54, 886 N.E.2d 181, 2008–Ohio–1625 and finding the possession of

chemicals and the engagement in any part of the production of drugs are allied offenses that do not have a separate animus); *State v. Collins,* 12th Dist. Clinton Nos. CA2010–12–021, CA2010–12–022, 2012–Ohio–430 (applying the pre-*Ruff* allied offenses test set forth in *State v. Johnson,* 128 Ohio St.3d 153, 942 N.E.2d 1061, 2010–Ohio–6314).

> \* \* \*.

> On the record in the case at bar, we find that Carr has demonstrated that he was convicted of allied offenses of similar import committed with the same conduct and with the same animus.

{¶62} In *Woods,* the state conceded the defendant's sentences should merge in accord with *State v. Ruff,* 143 Ohio St.3d 114, 2015–Ohio–995, 34 N.E.2d 892. 2016-Ohio-4830 at 25. In the instant case, appellee argues appellant committed the offenses separately because he still had supplies on hand for the manufacturing of meth, i.e., Pseudoephedrine pills. Therefore, appellee maintains, appellant did not manufacture meth every time he possessed supplies to do so. We find, however, that appellee essentially argued at the trial level that appellant's conduct proved both Counts I and II. We are unable to identify separate, identifiable harms from each offense in this case. Appellant did not commit the offenses separately nor were the two offenses committed with separate animus or motivation. His motivation and animus for obtaining and/or assembling the chemicals was to manufacture methamphetamine.

{¶63} Appellant's third assignment of error is therefore sustained. The sentences upon Counts I and II are vacated and the matter is remanded to the trial court for

resentencing.  Appellee must elect the offense for which appellant should be punished. *Carr*, supra, 2016-Ohio-9 at ¶ 44, citing *State v. Whitfield,* 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 25.

**CONCLUSION**

{¶64} Appellant's first assignment of error is overruled.  Appellant's second and third assignments of error are sustained.  The sentences upon Counts I and II are vacated.  The judgment of the Ashland County Court of Common Pleas is therefore affirmed in part and reversed in part, and this matter is remanded to the trial court for further proceedings.

By:  Delaney, J.,

Gwin, P.J. and

Baldwin, J., concur.